957 A.2d 984

**Sherri A. TURNER**

v.

**Raymond A. KIGHT, et al.**

**No. 5, Sept. Term, 2008.**

Court of Appeals of Maryland.

Oct. 7, 2008.

168

Ralph T. Byrd, Laytonsville, for Petitioner.

Patricia P. Via, Chief, Division of Litigation (Leon Rodriguez, County Atty., Marc P. Hansen, Deputy County Atty., Sharon V. Burrell, Associate County Atty. for Montgomery County, on brief), Rockville, Kathleen E. Wherthey, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., on brief), for Respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE, (Retired, Specially Assigned), IRMA S. RAKER, (Retired, Specially Assigned) and ALAN M. WILNER, (Retired, Specially Assigned), JJ.

WILNER, J.

The question before us is whether petitioner's complaint was erroneously dismissed by the Circuit Court for Montgomery County on the ground that the causes pled were barred by limitations. That question hinges on the proper construction to be given to 28 U.S.C. § 1367(d), which provides for the tolling of State statutes of limitations with respect to State-law claims (i) that are brought in a U.S. District Court, (ii) that are within the "supplemental jurisdiction" of that court, but (iii) over which the court eventually declines to exercise jurisdiction. We interpret § 1367(d) differently than did the Circuit Court and the Court of Special Appeals.

## BACKGROUND

On May 15, 2001, petitioner filed an 19–count complaint in U.S. District Court against Montgomery County, the county sheriff, several assistants in the sheriff's office, and officials and employees of the county detention center, all based on certain events that occurred on April 19 and April 21, 2000. Twelve counts of her complaint were brought under 42 U.S.C. § 1983 and alleged violations of petitioner's Federal Constitutional rights; seven counts were based on rights afforded by the Maryland Constitution or by Maryland common law. The details of the events complained of are not especially germane to this appeal, and it will suffice to say that all of the claims arose from the execution of an arrest warrant issued by a Maryland court and the treatment of petitioner once she was in custody.

On March 26, 2002, the District Court filed a Memorandum Opinion and Order in which it entered summary judgment in favor of the defendants on ten of the Federal claims, dismissed the remaining two, declined to exercise jurisdiction over the seven pendant State-law claims, and directed the clerk to close the case. On April 5, however, petitioner filed a timely motion for reconsideration which, on August 7, 2002, the court granted as to one Federal-law count against one defendant but otherwise denied. In its Order, the court directed the clerk to reopen the case.

On August 20, 2003, the court filed a Memorandum Opinion and Order granting the defendants' renewed motion for summary judgment on the one count under reconsideration. That produced another motion for reconsideration by petitioner which, on December 22, 2003, the court denied.[1] On January 15, 2004. petitioner filed an appeal to the U.S. Court of Appeals for the Fourth Circuit.

Although the briefs filed in the Federal appellate court are not in the record before us, it appears from the Opinion of that

---

1. The judge signed the order denying the motion for reconsideration on December 10, 2003, but it was not docketed until December 22.

court that the appeal concerned the judgments entered on petitioner's Federal claims. Finding no error with respect to those judgments, the court, on January 7, 2005, filed an Opinion affirming them. Unhappy with that result, petitioner moved for a rehearing *en banc*, which, on March 8, 2005, the court denied. The appellate mandate affirming the District Court judgments was issued March 16, 2005, and was docketed in the District Court on March 21. That mandate terminated the Federal action.

The action now before us, which the parties seem to agree is a repetition of the State-law claims that were filed in the Federal court, was filed in the Circuit Court for Montgomery County on March 11, 2005.[2] Some of the defendants in the current action have not been served. Those who were served filed or joined in a motion to dismiss based on limitations. The limitations argument presented by those defendants was essentially as follows: (1) the applicable statute of limitations with respect to petitioner's claims is three years (Maryland Code, § 5–101 of the Cts. & Jud. Proc. Article), (2) the causes of action here arose in April, 2000, (3) this action was not filed until March, 2005, long after the period of limitations expired, (4) Md. Rule 2–101(b) provides, in relevant part, that, if a State-law action is filed in U.S. District Court and that court declines to exercise jurisdiction over it, an action filed in a Maryland circuit court within 30 days after entry of the order of dismissal by the Federal District Court shall be treated as timely filed, (5) this action was not filed in the Circuit Court within 30 days after dismissal of the claims by the U.S. District Court, and (6) the action was therefore not timely under the Rule.

---

**2.** The complaint filed in Federal court is not in the record before us, so we cannot compare the two complaints. The record indicates that the State-law claims filed in Federal court comprised seven counts, founded on violations of the Maryland Constitution and Maryland common law. The complaint filed in Montgomery County consists of eighteen counts, all premised on violations of the Md. Decl. of Rights and common law tort. Despite the difference in the number of counts, we accept the parties' apparent agreement that the claims pled in the instant case are, indeed, the same as those pled in the Federal case.

Petitioner's response was based not on a construction of Rule 2–101(b), but on 28 U.S.C. § 1367(d), which she argued had the effect of interrupting the running of the statute of limitations from the time the action was filed in Federal court (May 15, 2001) until 30 days after the March 16, 2005 appellate court mandate, and that, as a result, less than thirteen months had actually run on the statute. The Circuit Court rejected that construction of § 1367(d), concluded that the statute of limitations continued to run and had expired while the case was pending in the U.S. District Court, that petitioner's only safety net was the 30–day window commencing when the claims were dismissed by the District Court, and that she failed to meet that requirement.

Upon that analysis, the court dismissed the actions against those defendants who had been served and denied a motion for reconsideration. Upon a consent motion, the court purported to enter a final judgment with respect to the served defendants under Md. Rule 2–602, apparently on the theory that, absent such an order, an appeal could not proceed because there remained several unserved defendants.[3] In a reported opinion, the Court of Special Appeals agreed with the trial court's conclusion that § 1367(d) does not suspend the running of the statute of limitations, but merely provides that if the period of limitations expires while the case is pending in a U.S. District Court, the period is extended until 30 days after dismissal of the claims by the District Court. *Turner v. Kight*, 178 Md.App. 1, 938 A.2d 863 (2007). We granted *certiorari* to consider three issues:

---

[3.] There was no need for an entry of judgment under Rule 2–602. In State *Highway Admin. v. Kee*, 309 Md. 523, 529, 525 A.2d 637 (1987), we made clear that a "named defendant who has not been served is not a party for the purpose of determining a final judgment" and that, if the judgment entered by the court disposes of all claims against all persons over whom the court has acquired jurisdiction, the judgment is final without a certification under Rule 2–602(b). *See also Burns v. Scottish Development Co., Inc.*, 141 Md.App. 679, 690, 787 A.2d 786 (2001). It would appear that such was the situation here and that the Rule 2–602 order was therefore unnecessary. Since an appeal could have been taken without it, however, it is at best a surplusage.

(1) Whether § 1367(d) serves (i) to suspend the running of limitations during the period that the State-law claims are pending in Federal court, so that, when those claims are dismissed, the plaintiff has as much time remaining as he or she had when the claims were filed in Federal court (plus 30 days), or (ii) merely to extend the limitations period until 30 days after the claims are dismissed if the period otherwise expires while the Federal action was pending;

(2) Whether the 30–day grace period commences when the State-law claims are dismissed by the U.S. District Court or when all Federal proceedings that may affect them, including appellate proceedings, are concluded; and

(3) Whether Md. Rule 2–101(b) can be read in harmony with § 1367(d).[4]

We shall conclude that § 1367(d) does, indeed, suspend the running of limitations and does not merely extend the period, that the suspension remains in effect until 30 days after all Federal proceedings, including appellate proceedings, are concluded, and that Rule 2–101(b) can be read in harmony with § 1367(d), as so construed.

## SECTION 1367

28 U.S.C. § 1367 was enacted as part of the Judicial Improvements Act of 1990. Although we shall comment further on the legislative history of that section, it will suffice at this point to note only that the section was intended to codify (and, to some extent, modify) existing case law regarding the extent to which a U.S. District Court, when presented in a civil action with a claim that is within its original jurisdiction, coupled with a claim that is not otherwise within its jurisdiction, could exercise "pendent," or "ancillary," or "supplemental" jurisdiction over the latter if it arose from the same conduct as the former.[5] Section 1367 contains four operative

---

**4.** We have taken the liberty of restyling the questions presented in the petition for *certiorari* for clarity.

**5.** The terms "supplemental," "pendent," and "ancillary," as modifiers of "jurisdiction," are occasionally used as if they were synonyms, and,

subsections. We are concerned with three of them—subsections (a), (c), and (d).[6]

Subsection (a), which provides for the grant of supplemental jurisdiction, states, in relevant part, that in any civil action over which the U.S. District Courts have original jurisdiction, they "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Subsection (c) specifies four circumstances under which the District Court may decline to exercise that supplemental jurisdiction, one of which is that the court has dismissed all claims over which it has original jurisdiction. That is what occurred in this case.[7] Subsection (d)—the section at issue

---

with the enactment of § 1367, as a practical matter they are. As explained by Justice Ginsburg, writing in dissent in *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 579–80, 125 S.Ct. 2611, 2632, 162 L.Ed.2d 502, 533–34 (2005), § 1367 codified under the heading of "supplemental jurisdiction" the separate court-created doctrines of pendent and ancillary jurisdiction. Pendent jurisdiction, she notes, "involved the enlargement of federal-question litigation to include related state-law claims." Ancillary jurisdiction was applied principally in diversity jurisdiction cases "to protect defending parties, or others whose rights might be adversely affected if they could not air their claims in an on-going federal-court action. Given jurisdiction over the principal action, federal courts entertained certain matters deemed ancillary regardless of the citizenship of the parties or the amount in controversy."

Although the two doctrines developed separately, the Supreme Court has recognized that they were "two species of the same generic problem" and that, under § 1367, there remains no "meaningful, substantive distinction" between them. *Exxon Mobil Corp. v. Allapattah Services, Inc., supra,* 545 U.S. at 559, 125 S.Ct. at 2621, 162 L.Ed.2d at 521, quoting in part from *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 370, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274, 280 (1978).

6. Subsection (b) contains certain exceptions to the grant of supplemental jurisdiction under subsection (a), none of which are applicable to this case, and subsection (e) defines terms that are not in dispute.

7. Subsection (c) permits the District Court to decline to exercise supplemental jurisdiction over the State-law claims if:

"(1) the claim raises a novel or complex issue of State law,

here—provides, in relevant part, that "[t]he period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

The first question before us is what Congress meant when it declared that the period of limitations "shall be tolled." The second is what it meant by "while the claim is pending."

 The rules governing the construction of Federal statutes are well-established. The preeminent canon requires the court to "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183, 124 S.Ct. 1587, 1593, 158 L.Ed.2d 338, 345 (2004), quoting from *Conn. Nat'l.Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391. 253–54, 503 U.S. 249, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397 (1992). If "the intent of Congress is clear and unambiguously expressed by the statutory language at issue, that would be the end of our analysis." *Zuni Public School Dist. No. 89 v. Department of Educ.*, 550 U.S. 81, 127 S.Ct. 1534, 1543, 167 L.Ed.2d 449, 461 (2007); *CSX Transp., Inc. v. Georgia State Bd. of Equalization*, —— U.S. ——, 128 S.Ct. 467, 474, 169 L.Ed.2d 418, 429 (2007). On the other hand, the interpretation of a word or phrase as used in a statute is not always governed by a dictionary definition of the word in isolation, but "depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Service*, 546 U.S. 481, 486, 126 S.Ct. 1252, 1257, 163 L.Ed.2d 1079, 1087–88 (2006). Extrinsic materials, such as legislative history, "have a role in statutory interpretation only to the extent they shed a reliable light on

---

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Services, Inc.,* *supra,* 545 U.S. at 568, 125 S.Ct. at 2626, 162 L.Ed.2d at 526–27. We have applied these same principles in construing Maryland statutes. *See Comptroller v. Science Applications,* 405 Md. 185, 198, 950 A.2d 766, 773 (2008).

## Tolling

■ The threshold question is whether, in the context of the issue before us, the phrase in § 1367(d) that the period of limitations "shall be tolled while the claim is pending" has a clear meaning that must be applied or is ambiguous and thus requires interpretation. We have regarded statutory language as ambiguous if it has more than one reasonable interpretation. *Anderson v. The Gables,* 404 Md. 560, 572, 948 A.2d 11, 19 (2008); *Barbre v. Pope,* 402 Md. 157, 173, 935 A.2d 699, 709 (2007); *Green v. Carr Glass,* 398 Md. 512, 522, 921 A.2d 235, 241 (2007). Unquestionably, under that test, the language is ambiguous. Most of the courts that have been called upon to construe the meaning of "tolled" as used in the context of statutes of limitations, including under § 1367(d), have recognized that the term can have more than one meaning. The Supreme Court gave the clearest recognition of that in *Chardon v. Fumero Soto,* 462 U.S. 650, 652, n. 1, 103 S.Ct. 2611, 2614, n. 1, 77 L.Ed.2d 74, 78, n. 1 (1983):

> " 'Tolling effect' refers to the method of calculating the amount of time available to file suit after the tolling has ended. The statute of limitations might merely be suspended; if so, the plaintiff must file within the amount of time left in the limitations period. If the limitations period is renewed, then the plaintiff has the benefit of a new period as long as the original. It is also possible to establish a fixed period such as six months or one year during which the plaintiff may file suit, without regard to the length of the original limitations period or the amount of time left when tolling began."

*See also Philip Morris v. Christensen,* 394 Md. 227, 262–65, 905 A.2d 340, 361–63 (2006); *Ryan v. Roman Catholic Bishop*

*of Providence*, 941 A.2d 174, 180, n. 12 (R.I.2008): ("Depending on the context, the word 'tolling' can have various meanings in legal writing").

Several of the cases dealing with the application of § 1367(d) acknowledge, tacitly or directly, that the phrase in question could be construed in different manners, and, indeed, the courts have split on what the proper interpretation should be. If the learned appellate judges around the country cannot agree on the meaning and application of the phrase, it cannot be said to have only one reasonable interpretation.

In the most recent exposition of this point, *Goodman v. Best Buy, Inc.*, 755 N.W.2d 354 (Minn.App.2008), the Minnesota court concluded that three different interpretations appear, at least initially, to be possible. First, citing *Chardon*, the court noted that the statutory language "could mean that section 1367(d) would 'annul' the state limitations period completely and replace it with a fixed period: the 30–day period after federal dismissal." 755 N.W.2d at 356–57. That is, in essence, a *substitution* approach: a Federal statute of limitations is substituted for the State statute. Alternatively, it might mean that § 1367 "would only toll the *expiration* of the state limitations period." *Id.* That interpretation, it said, "treats that period in the statute—the federal claim period plus thirty days—as a single span of time. If the state limitations period runs out during that span, the thirtieth day after dismissal becomes the new deadline." *Id.* at 357–58. That would appear to be an *extension* approach: if the limitations period under State law expires during the pendency of the Federal action, it is simply extended until the 30th day after dismissal of the pendent claims. As the Minnesota court observed, that would produce the same result as the first approach.

The third possibility is that the "shall be tolled" language means that "the state limitations period is *suspended*—i.e., the clock is stopped and the time is not counted—while the federal court is considering the claim and for thirty days after the claim is dismissed." *Id.* at 357–58. That is a *suspension* approach: upon dismissal of the pendent claims, the plaintiff

would have whatever time was left under the State statute of limitations when the action was filed in Federal court plus 30 days.

All three of these alternative interpretations have been presented to the courts, and, as noted, the courts are not in agreement as to which is the proper reading. The intermediate appellate courts of North Carolina and New Jersey, one intermediate appellate court in California, and the Supreme Court of the Commonwealth of the Northern Mariana Islands (a U.S. Territory) have clearly opted for the *extension* approach and rejected the *suspension* alternative. *See Huang v. Ziko*, 132 N.C.App. 358, 511 S.E.2d 305 (1999); *Estate of Fennell v. Stephenson*, 137 N.C.App. 430, 528 S.E.2d 911 (2000); *Harter v. Vernon*, 139 N.C.App. 85, 532 S.E.2d 836 (2000), *appeal dismissed and disc. review denied*, 353 N.C. 263, 546 S.E.2d 97 (2000), *cert. denied*, 532 U.S. 1022, 121 S.Ct. 1962, 149 L.Ed.2d 757 (2001); *Berke v. Buckley Broadcasting Corp.*, 359 N.J.Super. 587, 821 A.2d 118 (2003), *cert. denied*, 177 N.J. 571, 832 A.2d 322 (2003); *Kolani v. Gluska*, 64 Cal.App.4th 402, 75 Cal.Rptr.2d 257 (1998); *Juan (Zhang) v. Commonwealth*, 2001 WL 34883536 (N.M.I.2001). With no discussion, the Supreme Court of Alabama and an intermediate appellate court in Florida appear to have applied an *extension* theory as well. *See Weinrib v. Duncan*, 962 So.2d 167 (Ala.2007); *Dahl v. Eckerd Family Youth Alternatives, Inc.*, 843 So.2d 956 (Fla.App.2d Dist.2003). That, of course, is the approach adopted by the Court of Special Appeals in this case.

Three courts—in Minnesota, California, and Pennsylvania—have opted for the *suspension* approach. *See Goodman v. Best Buy, Inc., supra*, 755 N.W.2d 354; *Bonifield v. County of Nevada*, 94 Cal.App.4th 298, 114 Cal.Rptr.2d 207 (2001); and *Oleski v. Department of Public Welfare*, 822 A.2d 120 (Pa. Cmwlth.2003). Given these disparate interpretations, we must try to discern, as best we can, what Congress intended. To do that, we shall consider the reasoning of the courts that have already addressed the issue, how tolling has been construed in

related contexts, and what insights may properly be gained from looking at the legislative history of § 1367(d).

To the extent that the courts provided any analysis, the ones that have adopted the *extension* approach have done so by regarding § 1367(d) as a form of equitable tolling, even though it is statutorily based, and concluding that the *extension* approach provides the most appropriate balance, in that it suffices to serve the Congressional purpose of preserving pendent State-law claims from dismissal under State statutes of limitations and constitutes the least intrusion on State law. The *Kolani* court found the *suspension* approach to be unreasonable:

"Such a construction is not needed to avoid forfeitures, because 30 days is ample time for a diligent plaintiff to refile his claims and keep them alive. Further, such a construction does significant harm to the statute of limitations policy."

*Kolani v. Gluska, supra,* 64 Cal.App.4th at 410, 75 Cal.Rptr.2d 257.

Similarly, the New Jersey court in *Berke* expressed the view that "[d]espite its ambiguous use of the word 'tolling,' we do not believe that the federal statute intends a result that would permit a gross protraction of the limitations period in clear contravention of the underlying policy of statutory limitations on the time for bringing suit." *Berke v. Buckley Broadcasting Corp., supra,* 821 A.2d at 123. That view also drove the North Carolina decisions. In *Huang v. Ziko, supra,* 132 N.C.App. 358, 511 S.E.2d 305, 308, the lead case in that State, the court observed that the *suspension* approach "is contrary to the policy in favor of prompt prosecution of legal claims."

The Minnesota court in *Goodman,* in adopting the contrary *suspension* approach, did so by a process of elimination based on the structure of § 1367(d). The *extension* approach, it said, would apply only if the period allowable under the State statute of limitations expired while the action was pending in Federal court: "if the state deadline does *not* fall during that span of time, the state period of limitations is deemed to have

continued running, unaffected by section 1367(d)." *Goodman v. Best Buy, Inc., supra,* 755 N.W.2d at 357–58. Tolling, if defined in that manner, would occur only when a particular condition is met—expiration of the limitations period during the pendency of the Federal action. The court noted, however, that the tolling provided for in § 1367(d) is not conditional. The statute says that the period of limitations "shall be tolled" and thus requires tolling in every case. As a matter of statutory construction, therefore, § 1367(d) cannot be read as adopting an *extension* approach.

The court then concluded that the *substitution* approach also could not be squared with the statute. If Congress intended *that,* it would have designated a specific moment in time at which the substitution was to occur, but it did not do so. The statute does not say that any new Federal statute of limitations is to commence *when* the action is filed in Federal court or *upon* the filing of the Federal action, but simply tolls limitations *while* the action is pending and for 30 days thereafter, suggesting merely the suspension of an on-going, existing period of limitations.

The *Bonifield* court, rejecting the *extension* approach of its sister court in *Kolani,* relied more on the generic meaning of "tolling," as defined in an earlier California case. In that case, *Woods v. Young,* 53 Cal.3d 315, 279 Cal.Rptr. 613, 807 P.2d 455, 461 (1991), the California Supreme Court observed that "[t]olling maybe analogized to a clock that is stopped and then restarted" and that "[w]hatever period of time that remained when the clock is stopped is available when the clock is restarted." Following that view, the court in *Bonifield* concluded:

> "To toll the statute of limitations period means to suspend the period, such that the days remaining begin to be counted after the tolling ceases.... Therefore, by tolling the statute of limitations 'while the claim is pending [in federal court] *and* for a period of 30 days after it is dismissed unless State law provides a longer tolling period' (italics added), section 1367(d) operates at a minimum as follows: The days left in the statute of limitations period at the time

the federal claim was filed begin to run after the tolling ceases, i.e., on the 31st day after the federal claim is dismissed."

*Bonifield v. County of Nevada, supra,* 94 Cal.App.4th at 303–04, 114 Cal.Rptr.2d 207.

*Bonifield's* view of the more commonly applied conception of tolling is correct. It is the approach taken by *Black's Law Dictionary* (8th Ed.2004) which defines "tolling statute" as "[a] law that interrupts the running of a statute of limitations in certain situations, as when the defendant cannot be served with process in the forum jurisdiction." *Id.* at 1525. It was the approach taken by the Supreme Court in *Chardon v. Soto, supra,* 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74, dealing with whether a Puerto Rico statute of limitations was merely suspended or began to run anew following the denial of class certification in a 42 U.S.C. § 1983 class action. The Court there construed the word "tolling" to mean that "during the relevant period, the statute of limitations ceases to run." *Id.* at 652, n. 1, 103 S.Ct. at 2614, n. 1, 77 L.Ed.2d at 78, n. 1. *See also American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713, 727 (1974); *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353–54, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628, 635–36 (1983); *Ball v. Wal–Mart Stores, Inc.,* 34 F.Supp.2d 424 (S.D.Miss.1998). We have followed that approach as well. *See Philip Morris v. Christensen, supra,* 394 Md. at 264, 905 A.2d at 362 and *Bertonazzi v. Hillman,* 241 Md. 361, 216 A.2d 723 (1966).

The point made by the *Kolani* court, that an extension approach is entirely satisfactory to avoid forfeitures and that a suspension approach is not necessary to achieve that objective, is undoubtedly true. The fact that a better mechanism—one less intrusive on State sovereignty and interests—could, or perhaps *should,* have been chosen does not require a conclusion that Congress intended that mechanism if the language it used indicates otherwise. The intent of Congress must be measured by what it said, not by what it might have said. It used the word "tolled" without qualification, presumably aware of how that word had previously been interpreted and

applied by the Supreme Court, in *Chardon, American Pipe,* and *Crown Cork & Seal,* among other cases, and we can find nothing in the legislative history of the statute to indicate that it intended any other meaning.[8] We agree, therefore, with the *Goodman, Bonifield,* and *Oleski* courts that § 1367(d) must be read as adopting the suspension approach.

### Pending

■ We turn to the second question—how long does the suspension last? If the District Court declines to exercise its supplemental jurisdiction over pendent State-law claims and there is an appeal, does the 30–day grace period commence upon the dismissal of the claims by the District Court or upon the conclusion of the appellate process?

So far as we can tell, that issue has been considered in only two cases, both in California. In *Kendrick v. City of Eureka,* 82 Cal.App.4th 364, 98 Cal.Rptr.2d 153 (2000), the plaintiffs filed suit in U.S. District Court in February, 1995, based on events that occurred a month earlier. In June, 1997, the court, having granted summary judgment on the Federal

---

**8.** Under any of the three approaches, § 1367(d) would serve to "trump" State statutes of limitation and thus constitute a significant intrusion on State law and sovereignty. Even before the enactment of that law, and certainly afterward, there was a lively debate among law professors as to its Constitutionality, and, indeed, the Minnesota and South Carolina Supreme Courts found the law to be unconstitutional. *See Regents of University of Minnesota v. Raygor,* 620 N.W.2d 680 (Minn.2001); *Jinks v. Richland County,* 349 S.C. 298, 563 S.E.2d 104 (2002). The U.S. Supreme Court was able to avoid the Constitutional issue in *Raygor* by holding, as a matter of statutory construction, that § 1367(a) did not apply to claims against an unconsenting State possessing Eleventh Amendment immunity (*Raygor v. Regents of Univ. of Minn.,* 534 U.S. 533, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002)). The Constitutional debate ended, however, when the Court, fully aware of the effect of § 1367(d) on State law and sovereignty, reversed the South Carolina ruling, which involved claims against a county, and unanimously held the statute to be within the power of Congress under Art. III, § 1 to constitute Federal courts inferior to the Supreme Court. *Jinks v. Richland County,* 538 U.S. 456, 123 S.Ct. 1667, 155 L.Ed.2d 631 (2003). We are not constrained, therefore, to give the statute a narrower reading than is otherwise warranted for fear that a broader reading might raise Constitutional concerns. *See Clark v. Martinez,* 543 U.S. 371, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005).

claims, declined to exercise jurisdiction over the pendent State-law claims and dismissed them. The U.S. Court of Appeals affirmed the dismissal in June, 1998. The plaintiffs then sought *certiorari* in the Supreme Court, which was denied in February, 1999. A month later, they filed a complaint in State court, which was dismissed on limitations grounds.

The California appellate court affirmed the dismissal. Noting the absence of any decisions construing the word "pending," as used in § 1367(d), but relying on judicial construction of the term in other contexts, the court determined that there was "a consensus view that a matter remains 'pending' in the federal court system, at least arguably through appeal to the Courts of Appeals afforded as a matter of statutory right," but that there was no consensus with respect "to the effect of the certiorari procedure on the federal tolling statute." *Id.* at 370, 98 Cal.Rptr.2d 153.

The court concluded that, because appeals to the U.S. Supreme Court were not afforded as of right, but were discretionary, and because the filing of a petition for *certiorari* does not affect the finality of the judgment or stay the mandate of the appellate court, that proceeding did not continue to toll the running of the State statute of limitations. In light of the fact that the petition for *certiorari* was denied, the court did not need to address whether a different result would obtain if the petition had been granted. Because the plaintiff did not file the State action within 30 days after issuance of the U.S. Court of Appeals mandate, the action was untimely.

Although, in light of the facts and the actual result, the conclusions expressed by the *Kendrick* court with respect to the continued tolling of limitations pending an appeal of right were *dicta*, that *dicta* was adopted by the court as a holding in *Okoro v. City of Oakland,* 142 Cal.App.4th 306, 48 Cal.Rptr.3d 260 (2006). Citing *Burnett v. New York Central R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) and two lower Federal court cases, the *Okoro* court concluded that "[t]he notion that a matter remains pending through the appellate

process finds support elsewhere." *Id.* at 312, 48 Cal.Rptr.3d 260.

Section 1367(d) is hardly a model of clarity in this regard. The only court called upon to construe the meaning of "pending," as used in that statute, had to rely on interpretations given to the word in other contexts. In part, that may be because the structure of the statute itself creates some ambiguity.

In contrast to the more general language of Art. III, § 1 of the Federal Constitution, which extends the judicial power of the United States to the Supreme Court and "such inferior Courts as the Congress may from time to time ordain and establish," which would include, of course, the U.S. Courts of Appeal, all of the other parts of § 1367 focus specifically on proceedings in the District Court. Subsection (a) confers supplemental jurisdiction on the District Courts, not Federal courts generally; subsection (b) creates exceptions to the supplemental jurisdiction of the District Courts; and subsection (c) specifies when the District Courts may decline to exercise their supplemental jurisdiction. Subsection (d), although providing that limitations remains tolled "while the claim is pending," ends the tolling 30 days after the claim "is dismissed," without accounting for appeals from the dismissal.

That omission, of course, is what creates the ambiguity. A strict and literal reading of subsection (d), in the context of the rest of the statute, could well lead to a conclusion that the tolling does indeed end 30 days after dismissal by the District Court—that the specific provision for when the tolling ends trumps any uncertainty over the meaning of "pending." Such a literal reading, however, would be at odds with the purpose of the statute, as recognized by the U.S. Supreme Court and as revealed in the statute's legislative history, and it is therefore not the only, or, as we shall conclude, the preferred interpretation.

The legislative history of § 1367 well documents the purpose of the statute, which was confirmed by the Supreme Court in *Jinks v. Richland County, supra,* 538 U.S. 456, 123

S.Ct. 1667, 155 L.Ed.2d 631—the case sustaining its Constitutionality. It was intended to "eliminate[ ] a serious impediment to access to the Federal courts on the part of plaintiffs pursuing federal and state law claims that 'derive from a common nucleus of operative facts.' " *Id.* at 463–64, 123 S.Ct. at 1671–72, 155 L.Ed.2d at 640, quoting in part from *Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218, 228 (1966). Justice Scalia explained:

> "Prior to enactment of § 1367(d), [plaintiffs] had the following unattractive options: (1) they could file a single federal-court action, which would run the risk that the federal court would dismiss the state-law claims after the limitations period had expired; (2) they could file a single state-law action, which would abandon their right to a federal forum; (3) they could file separate, timely actions in federal and state court and ask that the state-court litigation be stayed pending resolution of the federal case, which would increase litigation costs with no guarantee that the state court would oblige. Section 1367(d) replaces this selection of inadequate choices with the assurance that state-law claims asserted under § 1367(a) will not become time-barred *while pending in federal court.*"

(Emphasis added).

Statutes of limitations vary from State to State, depending, in part, on the nature of the action. Mostly, they range between two and six years, although there are some wider variations. If an action is filed relatively promptly and the U.S. District Court acts expeditiously, it may well be that the need for a tolling under § 1367(d) would exist *only* in the event of an appeal. Even where that is not the case, if an appeal is taken by either party and § 1367(d) does not continue the tolling during the appellate process, the plaintiff will necessarily be faced with at least the third inadequate choice noted by Justice Scalia, of filing a new action in State court and hoping that the State court will stay proceedings while the plaintiff pursues (or defends) the appeal.

Two types of appeals can be taken from District Court decisions under § 1367. As in this case, if the court has dismissed the State-law claims only because it dismissed all of the Federal claims, the appeal is likely to be focused on the dismissal of the Federal claims. The State-law claims remain very much in play, however, for, if the dismissal of the Federal claims is reversed, the District Court's supplemental jurisdiction over those pendent claims will remain and likely will be exercised. Apart from any complaint about the dismissal of the Federal claims, appeals may also challenge more directly the decision to exercise or not exercise supplemental jurisdiction over the pendant State-law claims. *See Regan v. Starcraft Marine, LLC,* 524 F.3d 627 (5th Cir.2008); *Novak v. Metro-Health Medical Center,* 503 F.3d 572 (6th Cir.2007); *Williams Electronics Games, Inc. v. Garrity,* 479 F.3d 904 (7th Cir. 2007) (Decision not to exercise supplemental jurisdiction over State-law claims is reviewable for abuse of discretion); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n,* 48 F.3d 1260 (D.C.Cir.1995) (Decision to exercise supplemental jurisdiction, rather than dismiss or remand the State-law claims to State court, is also reviewable for abuse of discretion).

In either situation, the plaintiff, having chosen the Federal forum, must necessarily await the appellate ruling before knowing whether that forum is viable. As noted, if the tolling ends 30 days after dismissal of the pendant claims by the District Court, the plaintiff will be forced to file a protective action in State court and hope that the court will agree to stay proceedings until the Federal appeal is concluded. The State court, possibly faced with judicially or legislatively imposed time standards for disposing of cases, may be reluctant to do that—to keep an open case on its docket for an indeterminate period of time with no activity on it—thereby forcing both parties to litigate in both systems, with the troublesome prospect of inconsistent decisions. The Congressional intent was to avoid that dilemma, and the full implementation of that intent can be realized only by construing § 1367(d) to continue the tolling throughout the appellate process. There is, indeed,

some support for that construction in the legislative history of the statute.

The ultimate origin of § 1367 was the Federal Courts Study Act (102 Stat. 4644), being Title I of the Judicial Improvements and Access to Justice Act of 1988 (P.L.No. 100–702, 102 Stat. 4642), which established, within the Judicial Conference of the United States, a Federal Court Study Committee. That Committee, to be appointed by the Chief Justice of the United States, was to examine the problems then facing the Federal courts and to develop a long-range plan for the future of those courts, including the types of disputes resolved by them.

The Committee was appointed in December, 1988, and made its final Report in April, 1990.[9] Among the broad range of recommendations ultimately made by the Committee was that Congress "expressly authorize federal courts to assert pendent jurisdiction over parties without an independent federal jurisdictional base." *Report of the Federal Courts Study Committee*, Part I at 47. In order to minimize friction between the State and Federal courts, the Committee recommended that Congress "direct federal courts to dismiss state claims if these claims predominate or if they present novel or complex questions of state law, or if dismissal is warranted in the particular case by considerations of fairness or economy." *Id.* at 47–48.

On the heels of that Report, two law professors from the Western New England Law School took it upon themselves to draft a statute to implement that supplemental jurisdiction recommendation and to forward the draft to Congressman Robert W. Kastenmeier, who then chaired the Subcommittee on Courts, Intellectual Property and the Administration of Justice of the House Committee on the Judiciary.[10] With

---

**9.** We note with pride that one of the members of that Committee was Diana Gribbon Motz, later to serve with distinction on of the Maryland Court of Special Appeals and who now graces the U.S. Court of Appeals for the Fourth Circuit.

**10.** *See* Letter from Arthur D. Wolf to Robert W. Kastenmeier, June 8, 1990, included in FEDERAL COURTS STUDY COMMITTEE IMPLEMENTATION ACT AND

some modifications, that draft was included as § 120 of the Federal Courts Study Committee Implementation Act of 1990, H.R. 5381, and became § 1367.

One of the changes made from Professor Wolf's draft dealt with the issue at hand. Wolf's draft of subsection (d) provided that the period of limitations for any non-federal claim shall be tolled "while the claim is pending *in the district court* and for a period of 30 days after it is dismissed under subsection (c) unless state law provides for a longer tolling period." (Emphasis added). Although the text of Wolf's draft specifically referenced pendency in the District Court, in an explanatory statement, he characterized that provision as a tolling of limitations "while the non-federal claim is pending *in the federal court* and for 30 days after its dismissal." *Supra* at 695, n. 10. (Emphasis added). Kastenmeier and his co-sponsor, Congressman Carlos J. Moorhead, opted for the more general reference, and, as a result, H.R. 5381 provided, in proposed new § 1367(d), that the period of limitations shall be tolled "while the claim is pending *in Federal court* and for a period of 30 days after it is dismissed under subsection (c) unless State law provides for a longer tolling period." (Emphasis added). *See Hearing Before the Subcommittee on Courts, Intellectual Property, and the Administration of Justice, supra* at n. 10, at 30.

During deliberations on H.R. 5381 in the House of Representatives, subsection (d) was amended to delete the words "in Federal Court." As passed by the House, the subsection provided that limitations shall be tolled "while the claim is pending and for a period of 30 days after it is dismissed unless state law provides for a longer tolling period." House of Representatives, 101st Congress 2nd Sess. H.R. REP. No. 101–734 at 11. In the Senate, that part of H.R. 5381 was incorporated into H.R. 5316, the Judicial Improvements Act of 1990,

---

CIVIL JUSTICE REFORM ACT, *Hearing Before the Subcommittee on Courts, Intellectual Property, and the Administration of Justice,* 101st Congress, Second Session on HR 5381, Sept. 6, 1990, Serial No. 124, at 686.

and was enacted and signed into law without further change to § 1367(d).

What emerges from this history is a rejection of language that would have clearly tied the tolling to pendency of the State-law claim in the District Court and a decision to have the tolling continue while the claim is pending in the Federal courts generally. At the very least, that gives credence to giving the word its more general meaning and thereby more completely implementing the purpose of the law.

Upon this analysis, we conclude that § 1367(d) serves to suspend the running of a State statute of limitations from the time the State-law claim is filed in U.S. District Court until 30 days after (1) a final judgment is entered by the U.S. District Court dismissing the pendant State-law claims, or (2) if an appeal is noted from that judgment, issuance of an order of the U.S. Court of Appeals dismissing the appeal or a mandate affirming the dismissal of those claims by the District Court. Because the issue is not presented here, we need not consider whether the tolling would continue in the event a petition for *certiorari* is filed with the Supreme Court. Upon entry of the District Court judgment or issuance of the appellate order or mandate, the plaintiff will have whatever time that remained when the claims were filed with the District Court plus 30 days in which to file the State court action. The action now before us was filed well within that period.

### Rule 2–101(b)

Petitioner contends that there is a conflict between Md. Rule 2–101(b) and § 1367, and that the Rule must therefore yield to the Federal statute. Petitioner is correct that the Rule yields, but there really is no facial conflict. The Rule provides:

> "*Except as otherwise provided by statute,* if an action is filed in a United States District Court *or the court of another state* within the period of limitations prescribed by Maryland law and that court enters an order of dismissal (1) for lack of jurisdiction, (2) because the court declines to exercise jurisdiction, or (3) because the action is barred by the

statute of limitations required to be applied by that court, an action filed in a circuit court within 30 days after the entry of the order of dismissal shall be treated as timely filed in this State."

(Emphasis added).

As the italicized language makes clear, the Rule, by its own terms, yields to any inconsistent statute, so, to the extent that § 1367(d), as we have interpreted it, provides a greater tolling than does the Rule, the statute prevails by virtue of the Rule itself. The Rule does have independent significance, however, as it applies not just to actions filed in Federal court but to those filed in the courts of other States, to which § 1367(d) has no application.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE JUDGMENT OF CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND TO THAT COURT FOR FURTHER PROCEEDINGS; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.