Filed 6/28/21 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIE SALES,<br><br>    Plaintiff and Appellant,<br><br>      v.<br><br>CITY OF TUSTIN et al.,<br><br>    Defendants and Respondents. | G058873<br><br>(Super. Ct. No. 30-2018-01039545)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

The opinion filed June 8, 2021, is ordered modified as follows:

On page 4, at the end of the first new paragraph on the page, after the sentence ending, "The court entered its judgment on August 3, 2016, and Sales filed a timely appeal," add as footnote 2 the following footnote:

> 2     In a petition for rehearing in this appeal, the City notes that Sales appealed from the district court's denial of her motion for reconsideration of the judgment. The City does not suggest this appeal was untimely, cites no authority that the district court's or appellate court's jurisdiction lapsed to consider the reconsideration motion or the ensuing appeal, nor authority that Congress in enacting section 1367(d) intended motions for reconsideration to fall outside the period in which a claim is "pending" in federal court. We denied the City's reconsideration motion by a separate order. In any event, because the City did not raise or brief before its reconsideration motion the distinction it now raises between appealing a district court's entry of judgment and appealing the court's denial of a

motion for reconsideration of the judgment, we express no opinion on the subject.

This modification does not affect the judgment.

The petition for rehearing filed June 22, 2021, is DENIED.


GOETHALS, J.


WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIE SALES,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CITY OF TUSTIN et al.,<br><br>    Defendants and Respondents. | G058873<br><br>(Super. Ct. No. 30-2018-01039545)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James L. Crandall, Judge.  Reversed and remanded.

Law Office of Richard P. Herman and Richard P. Herman for Plaintiff and Appellant.

Woodruff, Spradlin & Smart, Daniel K. Spradlin, Robert L. Kaufman and Douglas J. Lief for Defendants and Respondents.

\*                \*                \*

Marie Sales appeals from the trial court's entry of judgment after the court granted summary judgment on her wrongful death and related state law claims arising from the death of her 19-year-old son, Paul Quintanar. The trial court concluded Sales failed to timely file her complaint in state court after the federal district court entered judgment against her on her federal claims and withdrew supplemental jurisdiction over her state law claims in an earlier federal complaint she had filed. The trial court was persuaded that the 30-day safe harbor in which to refile state law claims afforded by 28 U.S.C. § 1367(d)[1] began to run from the date of the federal district court's judgment, rather than after Sales's appeal to the Ninth Circuit. As we explain, settled law establishes that section 1367(d)'s tolling provisions extend "'through appeal to the courts of appeals afforded as a matter of statutory right.'" (*Okoro v. City of Oakland* (2006) 142 Cal.App.4th 306, 311 (*Okoro*).) We therefore reverse the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Because the pleadings frame the relevant issues for purposes of summary judgment (*Wassman v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 851), we begin with Sales's allegations in her complaint.

Around 8:30 p.m. on September 8, 2011, officers from the Tustin Police Department questioned Quintanar and his female companion about their presence behind a convenience store. The officers discovered "a small quantity" of marijuana possessed by Quintanar, for which he provided "his California Identification Card and his OC Medical Center Marijuana Medical card." Sales alleged the officers then "detain[ed] and attempt[ed] to arrest [him] for actions which were not a violation of anything. In particular these were protected activities under The Constitution and Laws of California."

---

[1] Hereafter section 1367(d) or simply subdivision (d).

According to Sales, Quintanar was apprehensive during the encounter "because his brother . . . had been 'beaten up' (tackled to the sidewalk by Tustin police officers, a few days before)." When Quintanar fled the allegedly "illegal detention and . . . illegal arrest," the officers—including one "in his police car with lights and sirens" activated—chased him "onto the on ramp to the 5 freeway until Mr. Quintanar ran onto the freeway and was killed by traffic."

Sales alleged the officers were known to be "dangerous and violent employees, prone to provoke and initiate physical confrontation without reasonable justification, and in a manner that demonstrates callous disregard for the rights and safety of civilian citizens." Sales also alleged that "the tactics used . . . were unreasonable, excessive, and deadly, motivated by racial prejudice, prejudice against medical marijuana users, not done for proper law enforcement purposes and with a purpose to harm not related to legitimate law enforcement objectives."

Sales's complaint alleged two causes of action. The first alleged "Violations of [the] California Constitution and Laws," including the Tom Bane Civil Rights Act (Civ. Code, § 52.1, subd. (b), Bane Act); the second was for wrongful death. The Bane Act affords statutory remedies for violations of "rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." (Civ. Code, § 52.1.)

Sales initially filed her lawsuit in federal court in October 2012, alleging both federal and state law causes of action, including for alleged civil rights violations under 42 U.S.C. § 1983. The parties do not dispute that the district court took supplemental jurisdiction under 28 U.S.C. § 1367 over Sales's state law claims against the City of Tustin and the arresting officers (collectively, the City).

The district court denied the City's motion for summary judgment on the basis of qualified immunity under federal law. (*Sales v. City of Tustin* (9th Cir. 2016) 649 Fed. Appx. 615, 616.) As permitted under federal law, the City appealed the ruling

3

notwithstanding the absence of a final judgment. (*Ibid.*) Over a dissent on Fourth Amendment issues concerning whether a reasonable person would have felt free to terminate the encounter with the officers and whether the officers had a reasonable suspicion that "criminal activity [wa]s afoot," the Ninth Circuit reversed the district court's denial of summary judgment. (*Id.* at p. 617.)

On remand to the district court, the court found the federal claims in Sales's operative complaint had all been resolved by the appellate ruling and by the district court's prior rulings in favor of the defendants, and therefore entered judgment against Sales on those claims. The court declined to continue to exercise supplemental jurisdiction over her state law claims and dismissed them without prejudice. The court entered its judgment on August 3, 2016, and Sales filed a timely appeal.

The Ninth Circuit affirmed the district court's judgment by a memorandum decision on October 12, 2018. Sales asked the Ninth Circuit to rehear her appeal en banc; the court denied her rehearing petition on November 27, 2018. The Ninth Circuit issued its equivalent of a remittitur on December 5, 2018.

Sales refiled her state law causes of action in the Superior Court on December 19, 2018. The City moved for summary judgment based on grounds that, as the trial court summarized, "the instant state action is untimely under the Supplemental Jurisdiction statute, 28 U.S.C. § 1367." The trial court accepted the City's argument that the "case is untimely under this provision because it was not filed by September 2, 2016, which was 30 days [after] the date that the federal district court entered the judgment [including] dismissal of the state court claims . . . ." The court acknowledged that Sales "brought a motion to vacate the judgment of the federal district court, which was denied and unsuccessfully appealed by plaintiff, but this does not change the outcome."

Sales subsequently filed a motion for reconsideration, which the City opposed and for which the City sought sanctions "for having to oppose it at all." The

4

trial court denied Sales's reconsideration motion, and the City withdrew its request for sanctions. The trial court entered judgment. Sales now appeals.

## DISCUSSION

Sales contends the trial court erred as a matter of law in adopting the City's argument for summary judgment on grounds she refiled her state law claims beyond the tolling period provided in section 1367(d). Sales is correct.

"A defendant moving for summary judgment bears the initial burden to show the plaintiff's action has no merit. [Citation.] The defendant can meet that burden by either showing the plaintiff cannot establish one or more elements of his or her cause of action or there is a complete defense to the claim." (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889; Code Civ. Proc., § 437c, subd. (p)(2).) "The expiration of the applicable statute of limitations is one such complete defense." (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 965.)

"The statute of limitations operates in an action as an affirmative defense." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 396.) Summary judgment based on an affirmative defense is only proper if the undisputed facts establish the defense. (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 468.) If the defendant fails to establish the necessary elements of a defense, the motion must be denied regardless of whether the plaintiff presented any evidence in opposition. (*Ibid.*)

We review a grant of summary judgment de novo. (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 848.) Statutory interpretation is also a matter of law for our de novo review. (*Land Partners, LLC v. County of Orange* (2018) 19 Cal.App.5th 741, 745.)

The parties agree that the relevant limitations period is found in the federal supplemental jurisdiction statute, section 1367(d). That statute, adopted in 1990, "codifies the court-developed pendent and ancillary jurisdiction doctrines under the label

'supplemental jurisdiction.'" (*Artis v. District of Columbia* (2018) __ U.S. __ [138 S.Ct. 594, 598] (*Artis*).) In expressly adopting the doctrine, Congress endorsed and "'enabled federal courts and litigants to . . . deal economically—in single rather than multiple litigation—with related matters.'" (*Ibid.*) Section 1367(a) provides, in relevant part, that a district court with original jurisdiction over a claim "shall have supplemental jurisdiction over all other claims . . . form[ing] part of the same case or controversy." Supplemental jurisdiction thus extends to "state claims brought along with federal claims arising from the same episode." (*Artis*, at p. 597.)

As *Artis* explained, "When [federal] district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims." (*Artis*, *supra*, ___ U.S. at p. ___ [138 S.Ct. at pp. 597-598].) That was the case here when the district court entered judgment against Sales on her federal claims on August 3, 2016. The court found that prior rulings in the case "completely resolve all of the federal claims asserted in the operative complaint in favor of the Defendants" and that, those "federal claims having been resolved, this Court declines to exercise supplemental jurisdiction over the remaining state" law claims, including wrongful death. Accordingly, the district court dismissed Sales's state law claims "without prejudice" to her refiling them in state court.

As *Artis* also explained, section 1367(d) addresses "the time within which state claims so dismissed may be refiled in state court." (*Artis*, *supra*, ___ U.S. at p. ___ [138 S.Ct. at p. 598].) With clarifying brackets interpolated by the *Artis* court, section 1367(d) provides: "'The period of limitations for any [state] claim [joined with a claim within federal-court competence] shall be tolled while the claim is pending [in federal court] *and for a period of 30 days after it is dismissed* unless State law provides for a longer tolling period.'" (*Artis*, at p. 598, italics added.)

The issue before us is whether Sales's state court case was filed within the time perimeter permitted by section 1367(d). We find that it was.

Section 1367(d)'s purpose was well-illustrated by Justice Scalia: "Prior to enactment of § 1367(d), [plaintiffs] had the following unattractive options: (1) They could file a single federal-court action, which would run the risk that the federal court would dismiss the state-law claims after the limitations period had expired; (2) they could file a single state-law action, which would abandon their right to a federal forum; (3) they could file separate, timely actions in federal and state court and ask that the state-court litigation be stayed pending resolution of the federal case, which would increase litigation costs with no guarantee that the state court would oblige. Section 1367(d) replaces this selection of inadequate choices with the assurance that state-law claims asserted under § 1367(a) will not become time barred while pending in federal court." (*Jinks v. Richland County* (2003) 538 U.S. 456, 463-464.)

In *Artis*, the 30-day period after federal court dismissal was not at issue in the same way it is here. The lower court there had held "that § 1367(d)'s instruction to 'toll' a state limitations period" did *not* mean "to hold it in abeyance, *i.e.*, to stop the clock," but rather that the period continued to run and subdivision (d) "merely provided a 30-day grace period for refiling" the matter in state court. (*Artis, supra*, ___ U.S. at p. __ [138 S.Ct. at p. 598].) The Supreme Court reversed, finding that "[s]ection 1367(d) is phrased as a tolling provision. It [therefore] suspends the statute of limitations for two adjacent time periods: while the claim is pending in federal court and for 30 days postdismissal." (*Artis*, at p. 603.)

The postdismissal period is critical here. Sales does not dispute that California's Tort Claims Act provided a six-month window for her to file her state law claims after she gave the City written notice of her claims, and the City thereafter rejected liability, in writing. (Govt. Code, §§ 901, 911.2; see also *Williams v. Horvath* (1976) 16 Cal.3d 834, 838 [limitations period applies to officers alleged to have been acting within scope of employment as public employees].) Nor does Sales deny that she filed her complaint in federal court on the last possible day for her state law claims to remain

7

viable, six months after the City denied them. The six-month limitations period thus having all but run, her state law claims survive only if she timely refiled them in state court within the 30 days provided for by section 1367(d).

The City argues, as it did in the trial court, that this 30-day period effectively runs from the date of the district court's rejection of a plaintiff's federal claims. At oral argument, as it did in its briefing, the City relies on *Okoro*, *supra*, Cal.App.4th 306, to support its contention that the district court's ruling date is dispositive even if, as here, the plaintiff appeals the district court's ruling to the Ninth Circuit. The City is mistaken as case law fails to support its position. *Okoro*, in particular, observed that "[i]n *Kendrick v. City of Eureka* (2000) 82 Cal.App.4th 364, 370 [*Kendrick*], Division Two of this court wrote that, for purposes of section 1367(d), 'a matter remains "pending" in the federal court system, *at least arguably **through** appeal* to the courts of appeals afforded as a matter of statutory right.'" (*Okoro*, at p. 311, italics and boldface added.)

*Okoro* recognized that the *Kendrick* "court's *holding* was that such matters do not remain '"pending"' during the time for the filing of a petition for writ of certiorari or for the consideration of such a petition." (*Okoro*, *supra*, 142 Cal.App.4th at pp. 311-312.) Nevertheless, *Okoro* concluded that "[a]lthough the court's statement as to [the] period of time for taking an appeal by right was dictum, we find it well reasoned and adopt it here." (*Id.* at p. 312.) The *Okoro* court explained that ample precedent, including United States Supreme Court authority, held that "a matter remains pending through the appellate process" and that "'pendency' *includes* the appellate process." (*Ibid.*, italics added.)

*Okoro* represents the consensus view that state law claims dismissed by a federal district court (§ 1367(c)(3)) remain within section 1367(d)'s tolling safe harbor while an appeal from the district court's dismissal of the related federal claims is pursued. The tolling question arises in state courts when a plaintiff attempts to refile his or her

8

state law claims after the federal appeal is resolved. Courts considering the issue in this context have uniformly interpreted "pending" in section 1367(d) to include at least, as *Okoro* concluded, the initial federal appeal as a matter of right. (*Okoro*, *supra*, 142 Cal.App.4th at p. 312; *Turner v. Kight* (2008) 406 Md. 167 [957 A.2d 984, 996-997] (*Turner*); *Berke v. Buckley Broadcasting Corp.* (2003) 359 N.J. Super.Ct. 587 [821 A.2d 118, 124]; *Harter v. Vernon* (2000) 139 N.C. App. 85 [532 S.E.2d 836, 839]; *Huang v. Ziko* (1999) 132 N.C. App. 358 [511 S.E.2d 305, 308]; *Lucas v. Muro Pharmaceutical, Inc.* (Mass. Super.Ct. 1994) 3 Mass. L.Rptr. 113 [1994 WL 878820, *2-3].) The City seems to misread *Okoro* and cites no contrary authority.

In *Turner*, the trial court reached the conclusion the City advocates here; Maryland's high court reversed. "[T]he plaintiff, having chosen the Federal forum, must necessarily await the appellate ruling before knowing whether that forum is viable. As noted, if the tolling ends 30 days after dismissal of the pendent claims by the District Court, the plaintiff will be forced to file a protective action in State court and hope that the court will agree to stay proceedings until the Federal appeal is concluded. The State court, possibly faced with judicially or legislatively imposed time standards for disposing of cases, may be reluctant to do that—to keep an open case on its docket for an indeterminate period of time with no activity on it—thereby forcing both parties to litigate in both systems, with the troublesome prospect of inconsistent decisions. The Congressional intent was to avoid that dilemma, and the full implementation of that intent can be realized only by construing § 1367(d) to continue the tolling throughout the appellate process." (*Turner*, *supra*, 957 A.2d at p. 995.)

As *Turner* also pointed out, the statute's legislative history supports this conclusion. An initial draft of section 1367(d) proposed by two law professors included the language, "shall be tolled 'while the claim is pending *in the district court*.'" (*Turner*, *supra*, 957 A.2d at p. 996.) As introduced, however, the bill that became section 1367 deleted this language and included instead the more general reference of "'pending *in*

*Federal court*'"; ultimately, the entire prepositional phrase "in Federal court" was deleted. (*Turner*, at p. 996.) Congress thus rejected linking tolling explicitly to dismissal by a district court. (*Ibid.*)

The City suggests Sales's appeal in federal court did not trigger the policy concerns behind section 1367(d)'s tolling protection because the appeal "did not address the State Claims on which judgment had been entered." In other words, the City suggests Sales implicitly forfeited her state law claims. *Turner* addresses this argument by observing that if, as here, the district court "dismissed the State-law claims only because it dismissed all of the Federal claims, the appeal is likely to be focused on the dismissal of the Federal claims. The State-law claims remain very much in play [because] if the dismissal of the Federal claims is reversed, the District Court's supplemental jurisdiction over those pendent claims will remain and likely will be exercised." (*Turner*, *supra*, 957 A.2d at p. 995.) We agree with *Turner* on this point.

In light of the foregoing, we find no basis to adopt the City's argument that tolling under section 1367(d) during ongoing federal proceedings does not include the appeal. *Okoro* says otherwise. The City cites *Okoro*, but then either fails to acknowledge its holding or misapplies it.

The question of tolling under section 1367(d) pending a grant or denial of certiorari is not before us, and we are not persuaded by the City's analogy to that process. The City does not dispute that Sales appealed the district court's decision against her to the Ninth Circuit as a matter of right. (28 U.S.C. § 1291; Fed. Rules App.Proc., rule 3(a), 28 U.S.C.; *Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326, 333.) Consequently, the issue is whether that appeal had terminated or was still "pending" at least until the Ninth Circuit's denial of Sales's petition for en banc review—if not its subsequent mandate.

The Ninth Circuit issued its mandate (the federal equivalent of a remittitur) on December 5, 2018: "The judgment of this Court, entered October 12, 2018, takes

10

effect this date. This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure." As one court has observed, at least for purposes of tolling the statute of limitations in a malicious prosecution action: "[T]here is no real difference between the issuance of a remittitur by the state Court of Appeal and the issuance of a mandate by the federal court of appeals insofar as their tolling effect . . . . Until one or the other is issued, the appeal of the underlying action is still pending and the statute is tolled." (*Korody-Colyer Corp. v. General Motors Corp.* (1989) 208 Cal.App.3d 1148, 1152.)

On this record and in light of Ninth Circuit precedent, we do not agree with the City that Sales's appeal was final or otherwise terminated with the filing of the Ninth Circuit panel decision against her on October 12, 2018. As the Ninth Circuit has explained, its jurisdiction over an appeal "does not terminate until issuance of the mandate. [Citations.] A court of appeals may modify or revoke its judgment at any time prior to issuance of the mandate, sua sponte or by motion of the parties." (*U.S. v. Foumai* (1990) 910 F.2d 617, 620.) Thus, "'[u]ntil a mandate is issued, a case is not closed. The parties may petition the court for a rehearing.'" (*Ibid.*) Indeed, upon denial of a petition for a rehearing en banc, a party may request rehearing of the denial of the petition. (Fed. Rules App.Proc., rule 35.)

In *Turner*, the plaintiff refiled her state law claims in state court within 30 days of the Fourth Circuit's denial of her petition for en banc rehearing of her appeal. The circuit court in its underlying panel opinion had affirmed the district court's "judgments entered on petitioner's Federal claims." (*Turner, supra*, 957 A.2d at p. 986.) After the Fourth Circuit denied her en banc petition, the plaintiff refiled her state law claims before the Fourth Circuit issued its mandate. (*Ibid.*) As relevant here, *Turner* concluded that section 1367(d)'s tolling directive extends through a federal circuit court's "mandate affirming the dismissal of those claims in the District Court." (*Turner*, at pp. 996-997.)

11

Because the Ninth Circuit may sua sponte modify or revoke its decision on appeal at any time up to, including, *and indeed after* it denies a party's petition for rehearing, we conclude Sales's appeal was pending until the appellate court issued its mandate on December 5, 2018. Sales therefore timely refiled her state claims within the 30-day tolling window afforded by section 1367(d) when she refiled her case in the superior court on December 19, 2008. Consequently, the trial court erred in granting the City summary judgment based on its contrary arguments.

Alternatively, the City argues that "summary judgment should be upheld based on *res judicata* and/or collateral *estoppel*" arising from the federal courts' decisions on her federal claims. As noted, the Ninth Circuit rejected Sales's civil rights claims based on alleged violation of the Fourth Amendment. Further, the district court in earlier rulings had found that Sales failed to state certain federal claims against the City and its police chief, and also granted summary judgment against her Fourteenth Amendment due process claims against the officers.

The City raised res judicata and collateral estoppel as alternative grounds for summary judgment, but the trial court did not reach these contentions in light of its untimeliness ruling. Res judicata and collateral estoppel are fact-based defenses that turn on the particular details of what issues and facts were raised, argued, and presented in federal court. The City does not include in the record on appeal the parties' motion papers, evidentiary submissions, or briefs presented to the district court or the Ninth Circuit. We decline to address these additional arguments in the first instance and, instead, remand for the trial court to reach the issues previously raised by defendants in their motions but not decided. (See *State Farm General Ins. Co. v. Wells Fargo Bank, N.A.* (2006) 143 Cal.App.4th 1098, 1119-1120; *Adams v. Pacific Bell Directory* (2003) 111 Cal.App.4th 93, 100-101.)

**DISPOSITION**

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.  Sales is entitled to her costs on appeal.


GOETHALS, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.