821 A.2d 118 (2003)
359 N.J. Super. 587
Lynne BERKE; David Abdinoor; Leonard Accardo; Jeff Adams; Arnold Adicoff, M.D.; Mary Ellen Anderson; Kermeth G. Anderson; Pablo Arias; Paul Arias; Kurt Arnst; Oscar Ascurra; Steward Austin; Robert Balbach, Jr.; Philip Banks, Jr.; Pasquale Barisciano; Lynda Battle; Arthur Beebe; Mr. And Mrs. David Beverly; Joseph Bires; John Bohmke; Raindolf Booker; Carl Boulay; Scott Boyer; Richard Bradley; Anna Brodycz; Melvin Burkhardt; Rosemary Camperlengo; Joseph Cardella; John Carey; Ken Carpenter; Samuel Castro; Frank Chan; Young Chang; Victor Cheuk; E. Norman Choiniere; Eugene Chriske; Raymond Clark; Craig Clerf; Mrs. Raymond Cody; Donald Coleman; Eduardo Console; William Coote; Shirley Corbett; David Cornell; Aida Cortes; Elizabeth Craig; Diana Daponte; Angela Davie; Louis Deblasio; Louis Demarco; Anthony Dibattista; Charles Digrigoli; *119 James Dow; Danny K. & Dorothy M. Dunbar; Janet Dunn; Donald Dyer; Eastern Analytical Services, Inc. c/o Paul Stascavage; James Edwards; Diane Evans; Harlow Farmer, III; Joseph Favel; Harold Ferioli; F.L. Ficks; Alice Firgau; Helen Freemonde; Peter Friel; Stuart Fries; Elizabeth Fuss; Floyd Gallegos, Sr.; Ira Gleber; Kathleen Glickman; Kenneth Gloyeske; Theodore Goldman; Doyle Gross; Henry Grossman; Guardian Investment Club c/o Dennis McCullough; Jabir Gulamhussein; Marlene Hallman; Dennis Hancock; Tyson Harper; John Harrison; Martin Hayes; Edward Heimrich; Victor Himel; Bryan Hodgkins; Brian Hoff; Charles Horvath; Hans Hunziker; Glorianne Jackson; Richard Jefferson; Kenneth Jenkins; Phillip Jensen; Clare Johnson; Eric Johnson; Ross Johnson; Wilfred Johnson; William Jones; Henry Karpik; Mark Kessler; Frazin Khiabani; Daniel Kilfoyle; Joseph Kolodzej, Jr.; Joseph Kolodzej, Sr.; Chester Kozlowski; Joan Kujanski; Fred Lacroix; Aaron Lehmann; Robert Lesinski; Howard Little; Robert Loshbough; Brice Loughridge; Yvonne Lumb; Lucille Lustica; Hubert Maehr; Marie Marchese; H. Steven Marelia; Ralph Mariconda; James Masone; Douglas McFadden-Blank; James C. McCann; William McGowan; Dennis Gregory Meryam; John Monney; Jessie Monney-Griffin; Isabel Mountbatten; Rother Murray; John Naylor; Frank Nedelka; Ann Newman; Farshid Nikfar; Brendan O'Connor; Dale Oberly; Garrett Ockert; Edward Olson; David Owen; Margaret Oxendine; Anthony Pannella; William Parker; George Patten, Jr.; Bobby Payne; Vincent Pero; Nadja Petrizzo; L. Gordon Pfefferkorn; Harry Pinkman; Nicholette Piscatelli; Alvin Pollex; Jeffrey Pope; Michael Potter; Freddie Pressley; Richard Presiosi; Grace Radonicic; Frank Recca; Stuart Rein; Jason Rein; Gary Riemer; Bradley Ritz; Anthony Rizzio; Lucien Rizzo; Thomas Roof; William Rothe; Onofrio Russo; Ralph Russo, Jr.; John Ryerson; Serg Saint-Prix; Sandra Santiago; Larry Scaringelli; Lynn Scheeler; Robert Schelich; Richard Schindler; F. Thomas Senor; Joseph Sharples; Ronald Shen; Robert Shifman; Herbert Sieh; Nicholas Sitinas; Lesley M. Smith; Lydia Smith; Franklin Smith; Doris Soape; James Sockman; William Sockman; Patricia Sofran; Paul St. Jean; Michael Stafford; Isreal Stein; John Stevens; Douglas Strohl; Ronald Sullo; Joseph Swinton; Harold Tapscott; Julia Taylor; Sandra Thomas; Francine Tindona; Joseph Tomaino; Kathleen Toth; Richard Townsend; Larry Traub; Alexander Tranto; Michael Tronolone; George Turner; Dolores Tuss; Edwin Utley; Ronald Vacca; Adele Vecchione; Arcenio Velez; Frank Viola; Inez Walsh; Joseph Wehner; Joseph Weinberger; Janet Westlake; Charles Williams; Rose Zappoli; and Abe Zyman, Plaintiffs-Appellants,
v.
BUCKLEY BROADCASTING CORPORATION, d/b/a WOR Radio, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 2003.
Decided April 30, 2003.
*120 Leonard Z. Kaufmann, Saddle Brook, argued the cause for appellants (Cohn Lifland Pearlman Herrmann & Knopf, attorneys; Mr. Kaufmann, on the brief).
Barry H. Gottfried of the District of Columbia bar, admitted pro hac vice, argued the cause for respondent (Francis & O'Farrell, attorneys, Morristown; Mr. Gottfried and Erica S. Simpson (Shaw Pittman), Washington, DC, of counsel; Hugh P. Francis, Morristown, on the brief).
*121 Before Judges PRESSLER, AXELRAD and HOENS.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
The issue raised by this appeal is whether plaintiffs' otherwise fatal failure to file this complaint prior to the expiration of the six-year limitations period is curable under the doctrine of substantial compliance. The trial court, concluding that it was not, dismissed the complaint. Plaintiffs appeal, and we reverse.
Plaintiffs are some three hundred investors in a worthless cable television security allegedly advertised by talk-show host Harry I. "Sonny" Bloch on WOR Radio, owned by defendant Buckley Broadcasting Corporation. The advertising and soliciting ceased in June 1994. Plaintiffs commenced an action in the Federal Court for the District of New Jersey on December 19, 1994, against Bloch, who died during the pendency of the action, Buckley, and others, alleging violation of Section 12(1) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a, et seq. They also pleaded common-law tort causes cognizable under New Jersey law. The federal action was unequivocally terminated by the Third Circuit on February 27, 2001, when it dismissed as untimely plaintiffs' appeal from the district court's summary-judgment dismissal with prejudice of the federal claim and, predicated upon its declination to exercise its supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367(c), its dismissal without prejudice of the state law claims. Berke v. Bloch, 242 F.3d 131 (3d Cir.2001). This action was commenced in the Law Division by complaint filed on May 10, 2001, some two and a half months after the Third Circuit's dismissal and some eleven months after the running of the statute of limitations.
Although defendant moved for summary judgment on the merits as well, the trial court's dismissal was based exclusively on the statute of limitations and the merits were not considered. We therefore do not address them. Accordingly, we confine our recitation of the facts to the procedural history of the federal litigation, which, plaintiffs assert and we agree, is sufficient to invoke the doctrine of substantial compliance.
As we have noted, the federal action was commenced in December 1994, five or six months after accrual of the stated causes of action. The jurisdictional predicate of the federal action was an alleged securities violation. The state claims against Buckley, alleging causes of action sounding in negligent misrepresentation, fraud, negligence, and gross negligence, were joined under the federal court's supplemental jurisdiction as authorized by 28 U.S.C.A. § 1367(a). The matter proceeded through discovery, having survived a defense motion in 1997 to dismiss for failure to state a claim. Fed.R.Civ.P. 12(b)(6). Five years later, and after the litigation had terminated as to other defendants, Buckley moved for summary judgment dismissing the federal claim. The motion was granted by order entered on December 14, 1999, the court's reasons therefor having been set forth in a letter opinion of that date. Having concluded that plaintiffs had failed to demonstrate a prima facie case under Section 12(1) of the Securities Exchange Act, the federal judge, in his letter opinion, then addressed the issue of supplemental jurisdiction. Noting that 28 U.S.C.A. § 1367(c)(1) authorizes the federal court to decline to exercise supplemental jurisdiction over a claim that "raises a novel or complex issue of State law," the judge opined that the "state law claims against Buckley raise unique issues with respect to radio broadcasting, i.e., a radio broadcaster's *122 duties in connection with advertisements on syndicated programs broadcast on their stations." Accordingly, he declined to exercise supplemental jurisdiction and dismissed the state claims without prejudice.
Plaintiffs appealed the December 14, 1999 order to the Third Circuit within the thirty days prescribed by Fed. R.App. P. 4(a). They were, however, notified by the clerk of that court that an appeal did not lie because the December 14 order was interlocutory in that there had been no final disposition in respect of two of the named defendants, Raymond Fillweber and William Geronimo. Consequently plaintiffs withdrew the appeal asserting their intention to refile it upon finality of the district court's disposition, and the matter remained unresolved in the district court. It appears that plaintiffs then moved for summary judgment against these two defendants.
By letter dated March 1, 2000, plaintiffs' attorney wrote to the district court judge, confirming their conversation of that date, in which plaintiffs' attorney advised the judge that the summary judgment motion was being withdrawn because settlements had been reached with Fillweber and Geronimo. He further advised that he could not file appropriate stipulations of dismissal until client approval and that approval would "take some time" because of the number of plaintiffs who had to be contacted. The letter went on to advise that "[i]n the interim, we wanted to make the Court aware of the procedures which we must undertake, so that the Court understands why the stipulations of dismissal will not be immediately forthcoming." The judge's response was the sua sponte entry on the same date, March 1, 2000, of a so-called conditional dismissal without prejudice to plaintiffs' right "within 60 days to reopen the action if the settlement is not consummated." The 60 days ran on May 1, 2000. Plaintiffs submitted the stipulation of dismissal as to Fillweber on May 4, 2000, to which the judge appended a "so ordered" notation at its foot, which he signed. On June 8, 2000, plaintiffs submitted the stipulation of dismissal as to Geronimo, which was filed without a "so ordered" notation.
Believing that there was finality of the district court disposition as of June 8, 2000, plaintiffs refiled a notice of appeal from the December 14, 1999 order with the Third Circuit on June 21, 2000. The sole remaining defendant, Buckley, moved for dismissal of the appeal on the ground of untimeliness. The Third Circuit reserved on the motion pending the filing of merit briefs. It then, on February 27, 2001, by its reported opinion, supra, 242 F.3d 131, granted defendant's motion to dismiss the appeal. The court held that plaintiffs had misapprehended the date of finality, which was not, as they believed, June 8, 2000, the date on which the final stipulation of dismissal was filed, but rather May 1, 2000, the expiration of the sixty-day without-prejudice condition of the district court's order of March 1, 2000.
This action against Buckley, essentially reiterating the state claims made against it in the federal complaint, was filed in the Superior Court, Law Division, on May 10, 2001, some ten weeks after the Third Circuit dismissal of the appeal. The action was dismissed on defendant's motion, the trial court concluding that plaintiffs' filing of an untimely appeal in the Third Circuit from the December 14, 1999 order did not justify application of the doctrine of substantial compliance. It was the trial court's view that at the latest, finality was measured from the date of plaintiffs' filing of the second stipulation of dismissal on June 8, 2000, and, consequently, that the eleven months that had elapsed from that date to the filing date was too long to *123 justify equitable relief from the statute of limitations which had run in June 2000. We disagree.
Before addressing New Jersey's equitable substantial compliance jurisprudence as it relates to statutes of limitation, we consider plaintiffs' contention that their action is saved by 28 U.S.C.A. § 1367(d), under which, they assert, the statute of limitations on the state claims was tolled during the entire period of the federal litigation. Thus, they claim, since they filed the federal action in the first instance in December 1994, only five months after accrual, there remained to them, after dismissal of the federal action, an additional five years and seven months in which to commence their state claims. Accordingly, they assert that even if the dismissal of the federal action were measured as of December 14, 1999, their May 2001 complaint in the state court was timely. Defendant disagrees, arguing that the federal statute merely provides a grace period of thirty days after conclusion of the federal action in which to commence the state action on the state claims if the statute of limitations has run during the pendency of the federal action. We concur in defendant's interpretation.
28 U.S.C.A. § 1367(d) provides in full as follows:
The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.
While neither the United States Supreme Court nor the circuit courts have yet directly addressed the issue of whether § 1367(d) is a "true" tolling statute or provides only a grace period, two state courts, California and North Carolina, have directly ruled on that question. North Carolina holds that the federal statute provides only a grace period and does not permit plaintiff to "tack on" that portion of the statute of limitations still unexpired when the federal suit was commenced. Harter v. Vernon, 139 N.C.App. 85, 532 S.E.2d 836, 841-842, appeal dismissed and review denied, 353 N.C. 263, 546 S.E.2d 97 (2000), cert. denied, 532 U.S. 1022, 121 S.Ct. 1962, 149 L.Ed.2d 757 (2001); Huang v. Ziko, 132 N.C.App. 358, 511 S.E.2d 305, 308 (1999). The two California cases that have ruled on the issue disagree with each other. Kolani v. Gluska, 64 Cal.App.4th 402, 75 Cal.Rptr.2d 257, 261-262 (1998), holds that the federal statute provides only a grace period, and Bonifield v. County of Nevada, 94 Cal. App.4th 298, 114 Cal.Rptr.2d 207, 211 (2001), takes the view that "tacking on" is permitted by the statute.
We agree with the grace-period reasoning. The evident purpose of the statute is only to preserve a plaintiff's right of access to the state court for a minimum thirty-day period in order for it to assert those state causes over which the federal court has declined to exercise jurisdiction and as to which the statute of limitations has run before that declination. Despite its ambiguous use of the word "tolling," we do not believe that the federal statute intends a result that would permit a gross protraction of the limitations period in clear contravention of the underlying policy of statutory limitations on the time for bringing suit. Rather, we are satisfied that the "tolling" provision of the statute refers to the period between the running of the statute while the action is pending in the federal court and thirty days following the final judgment of the federal court declining to exercise supplemental jurisdiction.
*124 Hence the import of the statute is simply to toll the running of the state statute of limitations from its customary expiration date until the expiration of a thirty-day period following conclusion of the federal action, that is, to provide a thirty-day grace period.
Because plaintiffs commenced the state action more than thirty days after conclusion of the federal action, measuring from the latest possible date, that is, the date of the Third Circuit dismissal of their appeal, relief under § 1367(d) is not available to them. We need not, therefore, consider the validity of that section, whose constitutionality, challenged on Tenth Amendment grounds, is presently under review by the United States Supreme Court. See Jinks v. Richland County, 349 S.C. 298, 563 S.E.2d 104 (2002), cert. granted, ___ U.S. ___, 123 S.Ct. 435, 154 L.Ed.2d 328 (2002), argued March 5, 2003, under No. 02-258, 71 U.S.L.W. 3569 (2003).
The question, then, is whether plaintiffs are entitled to relief from the strict application of the six-year statute of limitations under this State's equitable jurisprudence. We take our instruction on this issue from Galligan v. Westfield Centre Service, Inc., 82 N.J. 188, 412 A.2d 122 (1980), in which Justice Pashman, writing for the Court, first enunciated the doctrine of substantial compliance in the context of a timely, but eventually dismissed, federal action followed by a state action asserting the identical cause of action commenced after the running of the statute. There a survival and wrongful death action based on an April 17, 1975, automobile accident and resulting in the victim's death on May 19, 1975, was commenced in the federal court on an assertion of diversity jurisdiction on April 14, 1977, just three days before the statute ran on the survival action and a month before it ran on the wrongful death action. Since diversity was clearly lacking, the federal court dismissed the action on May 11, 1977. The state action asserting the same causes of action was commenced twenty-two days after the statute had run on the survival action but just before it ran on the wrongful death action. This court denied plaintiff's motion for leave to appeal the trial court's dismissal of the survival action on limitation grounds. The Supreme Court, however, granted leave to appeal and reversed.
The Court carefully balanced the competing policies of statutes of limitations on the one hand and a plaintiff's right of access to the court on the other. Declining to charge the plaintiff with the attorney's error in selecting the wrong forum, 82 N.J. at 194, 412 A.2d 122, the Court concluded that where the forum is erroneously selected by filing of a timely suit and the plaintiff acts diligently to rectify the error by refiling in the proper state forum, the policy of the statute of limitations is not offended by regarding the first erroneous filing as substantial compliance with the statute of limitations. In that case, the defendant is on timely notice of the suit against it, cannot therefore reasonably rely on repose, and is, accordingly, not unduly prejudiced by being required to defend on the merits. As the Court explained:
Unswerving, "mechanistic" application of statutes of limitations would at times inflict obvious and unnecessary harm upon individual plaintiffs without advancing these legislative purposes. See White, 76 N.J. at 378-379, 388 A.2d 206. [White v. Violent Crimes Compensation Bd., 76 N.J. 368, 388 A.2d 206 (1978)] On numerous occasions we have found "such particular circumstances as to dictate not the harsh approach of literally applying the statute of limitations but the application of the more equitable and *125 countervailing considerations of individual justice." [Id. at 192, 412 A.2d 122.]
Applying these principles to the facts then before it, the Court concluded that:
Examining the circumstances of this case, we find that giving effect to the filing of the complaint in federal court within the limitations period does no violence to the purposes underlying N.J.S.A. 2A:14-2. The federal complaint stated claims identical to those now before us. Defendants concede that the mere lapse of 22 days will not prejudice them on the merits if they are required to litigate the circumstances of the deceased's automobile accident. Cf. R.L. Mulliken, Inc. v. Englewood, 59 N.J. 1, 4, 279 A.2d 691 (1971). Timely notice of plaintiff's survival claimsalbeit by the unconventional vehicle of a jurisdictionally deficient complainthas alerted defendants to the possibility of having to defend against the allegations. Since the passage of an additional 22 days has impaired neither the defendants' ability to litigate nor the court's capacity to adjudicate, plaintiff's cause of action has not become "stale."
Defendants' repose in reliance upon the passage of time would not be justified in this case. While the federal action against them was still pending, defendants received notice that plaintiff was seeking redress in a State forum. Once the federal complaint was filed, defendants' sense of security could not reasonably exist before a dismissal. This is true despite the patent lack of federal jurisdiction. The principle of repose has its foundation in what Holmes called "the deepest instincts of man," Holmes, supra, 10 Harv.L.Rev. at 477, not in abstract notions of jurisdiction. Prohibiting this plaintiff from vindicating his claims in a State forum would not advance the Legislature's desire for "security and stability in human affairs." [Id. at 193-194, 412 A.2d 122.]
In sum, it held that under the circumstances, the federal filing constituted at least minimal substantial compliance with the statute of limitations.
The doctrine of substantial compliance was further defined by the Supreme Court in Negron v. Llarena, 156 N.J. 296, 716 A.2d 1158 (1998), in which a timely wrongful death action was filed in the federal court but the subsequent joinder of additional parties defeated diversity. The cause of action had accrued on January 24, 1991, the federal action was commenced on October 23, 1991, and the action was voluntarily dismissed because of the diversity problem on November 28, 1994. Plaintiff refiled in the state court on February 16, 1995, two and a half months later and after the statute had run. In concluding that the doctrine of substantial compliance saved the action, the Court adopted, in the context of the statute of limitations, the enumeration of the required elements of substantial compliance identified by this court in Bernstein v. Board of Trustees of Teachers' Pension Annuity Fund, 151 N.J.Super. 71, 376 A.2d 563 (App.Div. 1977), namely "(1) lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute." 156 N.J. at 305, 716 A.2d 1158 quoting Bernstein, 151 N.J.Super. at 76-77, 376 A.2d 563.
We applied the principles of Galligan in Zacharias v. Whatman PLC, 345 N.J.Super. 218, 784 A.2d 741 (App.Div.2001), a case in which, as here, plaintiff was caught up in the intricacies and anomalies of federal practice and procedure. We granted plaintiff limitations relief in the state court *126 in reliance on Galligan, whose holding we summarized as follows: "the erroneous filing of a complaint in the federal court suspended the running of the statute of limitations for purposes of an ensuing state court action during the period in which the complaint was pending in the federal court." 345 N.J.Super. at 225, 784 A.2d 741. And in Mitzner v. W. Ridgelawn Cemetery, 311 N.J.Super. 233, 709 A.2d 825 (App.Div.1998), we applied the Galligan rationale where the untimely filing in this state had been preceded by the dismissal of a timely complaint filed in the court of a sister state because it lacked personal jurisdiction over the defendant. There, in a cause subject to a two-year statute of limitations which accrued on February 1995, plaintiff filed a complaint in New York in April 1996. The New York action was dismissed on defendant's motion for lack of personal jurisdiction in July 1997, the statute of limitations by then having run. Plaintiff then filed a complaint alleging the same cause of action in New Jersey in August 1997, about a month after the New York dismissal. We concluded that plaintiff was entitled to the benefit of the doctrine of substantial compliance, holding that:
In the instant case, the timely filing in New York and the service of process were "`adequate to bring in the parties and to start the case on a course of judicial handling which ... [could have] lead to final judgment without issuance of new initial process....'" Burnett, supra, 380 U.S. at 426, 85 S.Ct. at 1053, 13 L.Ed.2d at 944 [Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)]. In such circumstances, absent a right to repose, we perceive no reason for barring plaintiffs from pursuing their action in New Jersey. (311 N.J.Super. at 239-240, 709 A.2d 825.)
In applying these principles here, we point out first that unlike the plaintiffs in Galligan and Mitzner, the choice of the federal forum in the first instance was not in error. There was a legitimate federal question conferring jurisdiction on the federal courts justifying the joinder of the state claims under the federal court's supplemental jurisdiction. Moreover, unlike the plaintiff in Galligan, these plaintiffs did not wait to file the federal action until the eve of the running of the statute but did so relatively promptly considering the complex nature of the claims and the multiple parties involved. Perhaps most significantly, because the federal forum was appropriate, the action proceeded through extensive discovery, a process by which the evidence was necessarily preserved. The fact of the matter then is that if plaintiffs had promptly filed in the state court after the December 14, 1999, interlocutory dismissal without prejudice, there would be no question at all as to the applicability of the substantial compliance doctrine.
The issue then is whether the subsequent events in the federal court justified plaintiffs' filing the state court action seventeen months after the dismissal. We are persuaded that they did. To begin with, we think it clear that a timely appeal to the Third Circuit from the federal court's dismissal of the federal claim would have "saved" the state action. We understand both defendant and the trial court to concur in that proposition. We consider, then, the consequences of the adjudicated untimeliness of that appeal.
At the outset, it is plain that a timely appeal could not be brought until the December 14, 1999, order was appealable. It was not eligible for appeal until entry of an order or judgment dismissing the entire action, namely, disposing of it in respect of the two defendants Geronimo and Fillweber. *127 When it appeared that there would be a settlement as to these two, plaintiffs' attorney so advised the court, undertaking to file appropriate stipulations of dismissal. It was clearly, therefore, the intent and expectation of the attorney that finality would occur when the two stipulations were filed. That expectation was, however, defeated, according to the Third Circuit, by reason of the trial judge's sua sponte entry of the conditional dismissal order on March 1, 2000. Had he not done so, the date of filing of the second stipulation would have rendered the Third Circuit appeal timely. Moreover, had the Third Circuit timely granted defendant's motion to dismiss instead of waiting months longer while the merits briefs it had required were prepared and filed, its dismissal might well have preceded the running of the statute of limitations.
In sum, then, we are persuaded the plaintiffs diligently pursued their federal court remedy. The only mistake their attorney made, which defendant deems fatal, was in not appreciating that the date of the sua sponte conditional dismissal would determine finality rather than the filing of the second stipulation of dismissal. In our view, that issue was reasonably debatable even though counsel was proved wrong. It was certainly an error a good deal more excusable than suing in a forum having neither subject matter jurisdiction, as in Galligan, nor personal jurisdiction, as in Mitzner.
The final issue is whether the ten-week delay between the Third Circuit dismissal and the state filing was too protracted to justify plaintiffs' resort to the substantial compliance doctrine. We note first that that is approximately the length of the delay in Negron. It is not inordinate. Beyond that, weighing plaintiffs' diligence against defendant's prejudice tips the scales in plaintiffs' favor. Defendant points to no prejudice other than its need for a new expert witness. All other discovery has been completed. Plaintiffs, on the other hand, while they could have filed the state action any time after the December 14, 1999 dismissal, nevertheless ought not be compelled to have abandoned their right of appeal of the disposition of the federal question to the Third Circuit in order to preserve their access to the state court on the state claims properly joined therewith under the federal court's supplemental jurisdiction. Clearly, had the summary judgment dismissing the federal claim been reversed, the issue of the court's supplemental jurisdiction would again have been viable. And plaintiffs' actions in pursing that appeal, while procedurally unsuccessful, were not unreasonable in the circumstances. Evaluation of plaintiffs' diligence against the virtual absence of prejudice to defendant satisfies us that all the elements of substantial compliance have been fully met.
The order appealed from is reversed, and we remand for further proceedings.