Filed 7/7/14

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| CITY OF LOS ANGELES et al., | ) | |
| | ) | |
| Plaintiffs and Respondents, | ) | |
| | ) | S210150 |
| v. | ) | |
| | ) | Ct.App. 5 F063381 |
| COUNTY OF KERN et al., | ) | |
| | ) | Tulare County |
| Defendants and Appellants. | ) | Super. Ct. No. VCU242057 |
| _____ | ) | |

Though federal court jurisdiction is constrained by article III of the United States Constitution principally to claims presenting a federal case or controversy or disputes between diverse parties, federal courts may assume supplemental jurisdiction over related state claims that "form part of the same case or controversy." (28 U.S.C. § 1367(a); see *United Mine Workers v. Gibbs* (1966) 383 U.S. 715, 725 [federal jurisdiction extends to state claims that share "a common nucleus of operative fact" with a federal claim].)[1] The assumption and retention of supplemental jurisdiction are not mandatory; inter alia, if the federal basis for jurisdiction dissolves but supplemental claims remain, the federal court may dismiss them, leaving them to be refiled in state court. (§ 1367(c)(3); see *Jinks v. Richland County* (2003) 538 U.S. 456, 459.) Congress has spelled out the

---

[1] All further unlabeled statutory references are to title 28 of the United States Code.

consequences for statute of limitations purposes of such a state claim journey into federal court:  the limitations period is "tolled while the claim is pending and for a period of 30 days after it is dismissed" absent a state rule extending the period still further.  (§ 1367(d).)

Section 1367(d) has confounded courts nationally and in California, with two near-equal camps emerging.  Under one view, the statute affords parties a grace period, allowing claims that would otherwise have become barred to be pursued in state court if refiled no later than 30 days after federal court dismissal; under another, it suspends the limitations clock, with any time left from before the federal filing beginning to run again 30 days after dismissal.  We conclude the first view is correct: Congress enacted section 1367(d) to provide a grace period for claims that would otherwise be lost, not to categorically suspend state statutes of limitations and thereby potentially extend filing periods for years following federal dismissal.  Because the Court of Appeal applied a different interpretation, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND

Local governments have a duty to treat sewage and dispose of the treatment byproducts, commonly known as biosolids.  (*City of Los Angeles v. County of Kern* (C.D.Cal. 2007) 509 F.Supp.2d 865, 871.)  One widely used method is to recycle biosolids as farm fertilizer.  (*Ibid.*)  The City of Los Angeles and other plaintiffs (collectively Los Angeles) have for years recycled much of their biosolids on farmland, some of it owned by the City of Los Angeles, in unincorporated portions of the County of Kern (Kern).  (*Id.* at pp. 873–875.)

In June 2006, Kern voters approved Measure E, a ban on the use of biosolids as fertilizer in unincorporated Kern.  (*City of Los Angeles v. County of Kern*, *supra*, 509 F.Supp.2d at pp. 876–877.)  Shortly thereafter, Los Angeles sued in federal court, alleging inter alia that Measure E violated the federal equal

2

protection clause and dormant commerce clause,[2] exceeded the limits of Kern's police powers, and was preempted by state law. (See *City of Los Angeles v. County of Kern* (C.D.Cal. 2006) 462 F.Supp.2d 1105, 1111–1119.) The district court granted a preliminary injunction (*id.* at pp. 1108–1109) and thereafter granted summary adjudication on the commerce clause and preemption claims and entered judgment in Los Angeles's favor. (*City of Los Angeles v. County of Kern*, *supra*, 509 F.Supp.2d at pp. 870, 902.)

The Ninth Circuit reversed. (*City of Los Angeles v. County of Kern* (9th Cir. 2009) 581 F.3d 841, 849.) It held Los Angeles lacked prudential standing because its interests were not of the sort sought to be protected by the dormant commerce clause. (*Id.* at pp. 846–849.) Because the remaining basis for the judgment, state preemption, was a nonfederal issue, the Ninth Circuit vacated the judgment and remanded to permit the district court to exercise discretion whether to retain the case. (*Id.* at p. 849, citing § 1367.) On remand, the district court declined to exercise supplemental jurisdiction, citing the novel and complex nature of the remaining state preemption issue, and on November 9, 2010, dismissed the case. (See § 1367(c).)

On January 26, 2011, 78 days after dismissal, Los Angeles refiled suit in state court. Like the federal action, the state suit alleged violation of the dormant commerce clause, actions in excess of Kern's police powers, and state preemption. The trial court rejected Kern's argument that the suit was time-barred under section 1367(d) and granted Los Angeles a preliminary injunction.

---

[2]     Under the Supreme Court's dormant commerce clause doctrine, even in the absence of federal legislation, states and localities may be prohibited from regulating in ways that unduly burden the flow of interstate commerce. (See, e.g., *Philadelphia v. New Jersey* (1978) 437 U.S. 617, 623–629.)

3

The Court of Appeal affirmed. Before reaching the merits, it considered and rejected Kern's argument that suit was untimely under the applicable statutes of limitations and section 1367(d). The Court of Appeal reasoned that section 1367(d) suspended the running of the statute of limitations for the entire time suit was pending in federal court, plus 30 days, that thereafter any unexpired time remaining on the applicable statutes of limitations began running, and that each of Los Angeles's claims was thus timely because suit was refiled long before even the shortest unexpired limitations period would have lapsed.

The Court of Appeal's decision added to an existing split. While the Court of Appeal in *Kolani v. Gluska* (1998) 64 Cal.App.4th 402 interpreted section 1367(d) as providing only a 30-day grace period in which to refile otherwise expired claims, the Court of Appeal in *Bonifield v. County of Nevada* (2001) 94 Cal.App.4th 298 had, like the Court of Appeal here, rejected that interpretation in favor of a reading that suspended the statute of limitations and tacked on any unexpired time beginning 30 days after dismissal. (See also *Okoro v. City of Oakland* (2006) 142 Cal.App.4th 306, 311, fn. 5 [noting the existing split but not taking sides because the complaint in that case was timely under either view of § 1367(d)].) We took review to resolve the split.

DISCUSSION

I.      *Section 1367(d): Its Text*

Section 1367(d) provides in full: "The period of limitations for any claim asserted under subsection (a) [i.e., asserted under supplemental jurisdiction in federal court], and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." When interpreting federal statutes, no less than when interpreting state statutes, our

4

foremost duty is to discern and give effect to the legislative body's intent, beginning with the text. (*Dole v. Steelworkers* (1990) 494 U.S. 26, 35; *Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1095.)

Tolling is a centuries-old concept. (E.g., *Stewart v. Kahn* (1871) 78 U.S. 493, 503–507 [upholding Congressional power to toll state claims during the pendency of the Civil War]; *Hanger v. Abbott* (1868) 73 U.S. 532, 539–542 [applying the common law to toll claims]; see *Raygor v. Regents of Univ. of Minn.* (2002) 534 U.S. 533, 551 & fn. 4 (dis. opn. of Stevens, J.) [tracing tolling as far back as the 17th-century common law].) Long-standing usage has not produced a single, settled understanding of the term, which has been applied to a cluster of related principles. We have identified as "the most common understanding" of tolling a temporary abatement or suspension of the running of a time period. (*People v. Leiva* (2013) 56 Cal.4th 498, 507–508; see *Cuadra v. Millan* (1998) 17 Cal.4th 855, 864–865.) However, tolling may refer not only to the suspension of a statute of limitations, but also its extension (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192) or its renewal or revival (Garner, Dict. of Legal Usage (3d ed. 2011) p. 897).

Courts confronting tolling in the context of section 1367(d) generally recognize the statute is susceptible to multiple reasonable interpretations. (*Turner v. Kight* (Md. 2008) 957 A.2d 984, 989; *Berke v. Buckley Broadcasting Corp.* (N.J.Super.Ct.App.Div. 2003) 821 A.2d 118, 123; *In re Vertrue Mktg. & Sales Practices Litig.* (N.D.Ohio 2010) 712 F.Supp.2d 703, 722–723, affd. (6th Cir. 2013) 719 F.3d 474; but see *Bonifield v. County of Nevada*, *supra*, 94 Cal.App.4th at p. 304 [§ 1367(d) has but one "plain meaning"].) Indeed, these courts have recognized at least three interpretations as colorable. Under the "suspension" approach, the statute could be read to stop the running of the statute of limitations and, following dismissal of a claim and the expiration of 30 additional days, tack

5

on however much time remained when the claim was originally filed in federal court. (*Bonifield*, at pp. 303–304.) Alternatively, under the "grace period" approach, the statute could abate the expiration of any period of limitations for as long as a claim was pending in federal court plus 30 days after dismissal. (*Kolani v. Gluska*, *supra*, 64 Cal.App.4th at pp. 409–411.) Finally, under the "substitution" approach, the statute might replace any state deadline with a federal one, such that parties would have 30 days to refile following dismissal whether or not a longer period might otherwise still remain under state law. (*Turner*, at pp. 989–990; *Goodman v. Best Buy, Inc.* (Minn.Ct.App. 2008) 755 N.W.2d 354, 357; *In re Vertrue Mktg. & Sales Practices Litig.*, *supra*, 712 F.Supp.2d at p. 722.)[3]

The Court of Appeal here concluded the suspension approach is the "most plausibl[e]" reading of the statute. As a purely textual matter, we agree the most natural reading of the statement that "[t]he period of limitations . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed" (§ 1367(d)) is that the period's running shall be suspended, and shall restart 30 days after dismissal (see *People v. Leiva*, *supra*, 56 Cal.4th at pp. 507–508; *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 674).

Los Angeles urges us to go further and declare the suspension approach the *only* plausible reading of section 1367(d), thus foreclosing consideration of extrinsic material that might bear on Congress's true intent. Indeed, Los Angeles and the *Bonifield* court interpret our precedents as essentially dictating this result.

---

**3** A simple example will illustrate the differences between these approaches. Consider a state claim that has been dismissed after two years in federal court, with one year to go on the applicable statute of limitations. Under the suspension approach, a plaintiff would have three years, plus 30 days, in which to refile. Under the grace period approach, a plaintiff would have one year. Under the substitution approach, a plaintiff would have only 30 days.

(See *Bonifield v. County of Nevada*, *supra*, 94 Cal.App.4th at pp. 303–304.) However, a provision with more than one plausible meaning is not unambiguous. (*Independent Energy Producers Assn. v. McPherson* (2006) 38 Cal.4th 1020, 1036.) And while we may establish presumptions as to how a term should be understood in state judicial opinions (*Cuadra v. Millan*, *supra*, 17 Cal.4th at pp. 864–865) and legislation (*Pearson Dental Supplies, Inc. v. Superior Court*, *supra*, 48 Cal.4th at pp. 673–675), we have no similar authority with respect to the language Congress chooses; that we have preferred a particular understanding of a term does not demonstrate Congress shared that intent when it used the same term.

To illuminate what Congress meant, Los Angeles cites to numerous statutes in which Congress has, when it intended to afford parties a grace period, explicitly framed its intentions that way. (15 U.S.C. § 1691e(f); 28 U.S.C. § 2415(e); 49 U.S.C. § 11705(d); see also 11 U.S.C. § 108.) For its part, Kern cites to numerous statutes in which Congress has, when it intended a suspension of a statute of limitations, framed its intentions in just *that* way. (15 U.S.C. § 16(i); 19 U.S.C. § 1621(2); 28 U.S.C. § 2244(d)(2); 50 U.S.C. Appen. § 526(a).) The conclusion we draw from these competing examples is simply that in other instances Congress has been clearer than it was here. We must cope with the sui generis language of section 1367(d) as it was drafted, imprecision and all.

Approaching that language with appropriate judicial humility, we decline to assume the reading we find most natural is the only one Congress could have intended. If we treat "tolled" as a synonym for "suspended" or "abated," we must still identify what it is the statute suspends or abates. The statute identifies that which is tolled as the "period of limitations," but does not identify whether by this it intends to abate the running of the period of limitations, Los Angeles's preferred interpretation, or its expiration, as Kern prefers. As well, section 1367(d)'s additional tolling "for a period of 30 days after" has no clear correlative in other

7

suspension statutes Congress has enacted or we have interpreted, casting some doubt on whether all Congress intended was the suspension approach. Finally, if we adopt the facially more plausible reading of the statute as abating the running of the period of limitations, we arrive at an interpretation that could delay for years resolution of claims that even absent section 1367(d) would have suffered no bar. Consider a state claim subject to a four-year statute of limitations upon which a plaintiff sues in federal court one year after accrual, and which the federal court dismisses two years later, leaving one year remaining on the state clock. Under the suspension approach, the state statute of limitations would effectively be extended to six years, subjecting a defendant to three additional years of doubt as to whether a further suit would follow and during which the defendant would need to try to preserve evidence and guard against fading memories. Why Congress would have wanted such a result is not immediately obvious, and we hesitate to impute such an intent without firmer evidence.

The uncertainty we find in the text is mirrored by a deep and long-standing national divide over section 1367(d)'s true meaning. More than one dozen courts, in California and across the country, have weighed in; the statute has divided them virtually in half.[4] As even a sister state supreme court that ultimately embraced

---

[4] Compare, e.g., *Weinrib v. Duncan* (Ala. 2007) 962 So.2d 167, 169–170 (grace period approach); *Dahl v. Eckerd Family Youth Alternatives, Inc.* (Fla.Dist.Ct.App. 2003) 843 So.2d 956, 958 (same); *Berke v. Buckley Broadcasting Corp.*, *supra*, 821 A.2d at pages 123–124 (same); *Harter v. Vernon* (N.C.Ct.App. 2000) 532 S.E.2d 836, 839–840 (same); *Huang v. Ziko* (N.C.Ct.App. 1999) 511 S.E.2d 305, 308 (same); *Juan v. Commonwealth* (N.Mar.I. 2001) 6 N.M.I. 322, 326–327 (same) with *In re Vertrue Mktg. & Sales Practices Litig.* (6th Cir. 2013) 719 F.3d 474, 481 (suspension approach); *Turner v. Kight*, *supra*, 957 A.2d at pages 992–993 (same); *Goodman v. Best Buy, Inc.* (Minn. 2010) 777 N.W.2d 755, 758–761 (same); *Oleski v. Dept. of Public Welfare* (Pa. Commw.Ct. 2003) 822 A.2d 120, 126 (same).

the suspension interpretation recognized:  "If the learned appellate judges around the country cannot agree on the meaning and application of the phrase ['shall be tolled while the claim is pending'], it cannot be said to have only one reasonable interpretation."  (*Turner v. Kight*, *supra*, 957 A.2d at p. 989; see *People v. Leiva*, *supra*, 56 Cal.4th at p. 510 [recognizing that a split in authority over the interpretation of a tolling provision may reflect ambiguity].)  Reasonable jurists can and do differ over the best understanding of the statute, one whose text lacks an indisputable plain meaning.[5]

The Supreme Court, in rejecting a similar plea to discern legislative intent from the text of a statute alone without considering its "language against the background of its legislative history and historical context," explained: " '[It] is a

---

[5]     A statute whose meaning is pellucid would also be unlikely to draw as much criticism for its drafting as section 1367(d), and section 1367 in general, have.  (See, e.g., *Exxon Mobil Corp. v. Allapattah Services, Inc.* (2005) 545 U.S. 546, 579 (dis. opn. of Ginsburg, J.) [§ 1367 "is hardly a model of the careful drafter's art"]; 13D Wright et al., Federal Practice and Procedure: Jurisdiction and Related Matters (3d ed. 2008) § 3567.4, pp. 459 [§ 1367(d) "is not a model of clarity"], 470 [the subsection suffers from "poor drafting"]; Freer, *Compounding Confusion and Hampering Diversity: Life After* Finley *and the Supplemental Jurisdiction Statute* (1991) 40 Emory L.J. 445, 486 [§ 1367 was "drafted in such haste" that it will leave a "legacy" of "confusion"]; Arthur & Freer, *Grasping at Burnt Straws: The Disaster of the Supplemental Jurisdiction Statute* (1991) 40 Emory L.J. 963, 964 [§ 1367 was "very poorly drafted, creating ambiguity"; cataloguing academic criticism of uncertainties left by the statute's language]; Oakley, *Recent Statutory Changes in the Law of Federal Jurisdiction and Venue: The Judicial Improvements Acts of 1988 and 1990* (1991) 24 U.C. Davis L.Rev. 735, 736–737, fn. 2 [recounting the after-midnight enactment of the statute that led to some of its "oddities"].)  Even scholars who assisted Congress in drafting section 1367 acknowledge "[t]he statute is concededly not perfect" (Rowe, Jr., et al., *Compounding or Creating Confusion About Supplemental Jurisdiction?  A Reply to Professor Freer* (1991) 40 Emory L.J. 943, 961) and identify unintended oversights in the statute they "can only hope that the federal courts will plug" when interpreting it (*id.* at p. 961, fn. 91).

"familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within . . . the intention of its makers." ' " (*California Federal S. & L. Assn. v. Guerra* (1987) 479 U.S. 272, 284.)  Where, as here, no single textually determined construction presents itself, we are well advised not to stop with the most plausible reading but to consult other interpretive aids, including legislative history and the context of the enactment.  (*People v. Leiva*, *supra*, 56 Cal.4th at pp. 510–511; *Jankey v. Lee* (2012) 55 Cal.4th 1038, 1050– 1052.)

II.	*Section 1367(d):  Its Legislative History*

Section 1367 was enacted as part of the Judicial Improvements Act of 1990.  (Pub.L. No. 101–650, § 310 (Dec. 1, 1990) 104 Stat. 5089, 5113–5114; *Exxon Mobil Corp. v. Allapattah Services, Inc.*, *supra*, 545 U.S. at p. 557; *Raygor v. Regents of Univ. of Minn.*, *supra*, 534 U.S. at p. 540.)

Drawing from the act's legislative history, Kern argues Congress wanted to ensure cases were resolved expeditiously:  "The purpose of this legislation is to promote for all citizens—rich or poor, individual or corporation, plaintiff or defendant—the just, speedy, and inexpensive resolution of civil disputes in our Nation's Federal courts."  (Sen.Rep. No. 101–416, 2d Sess., p. 1 (Aug. 3, 1990), reprinted in 1990 U.S. Code Cong. & Admin. News, p. 6804.)  The abstract and hortatory nature of these stated goals aside, the report they come from was issued at a time when the Senate bill did not even contain section 1367.  (See Sen. No. 2648, 101st Cong., 2d Sess. (1990) as amended Aug. 9, 1990.)  Section 1367 was part of the House version at the time (H.R. No. 5381, 101st Cong., 2d Sess., § 120 (1990) as introduced July 26, 1990), but was not added to the Senate version until October (Sen. No. 2648, 101st Cong., 2d Sess., § 310 (1990) as amended Oct. 27, 1990).  Accordingly, the Senate Judiciary Committee's nebulous expression of intent affords no insight here.

10

Other history sheds clearer light on the intentions that underlay section 1367(d). The provision adopted a recommendation from the Federal Courts Study Committee, a blue ribbon panel formed to propose court reforms (H.R. Rep. No. 101–734, 2d Sess., pp. 15–17, 27 (1990), reprinted in 1990 U.S. Code Cong. & Admin. News, pp. 6861–6862, 6873 (House Report)); its specific language was the product of "substantial helpful comment from the academic community" (Sen. Debate on Sen. No. 2648, 101st Cong., 2d Sess., 136 Cong. Rec. S17570, S17580 (daily ed. Oct. 27, 1990)). Professors Thomas Mengler, Thomas Rowe, Jr., and Stephen Burbank, three scholars who assisted Congress in drafting and revising section 1367,[6] explained that subdivision (d) was intended to implement a proposal from the American Law Institute (ALI) for tolling pendent state claims. (Mengler et al., *Congress Accepts Supreme Court's Invitation to Codify Supplemental Jurisdiction* (1991) 74 Judicature 213, 216, fn. 28; see ALI, Study of the Division of Jurisdiction Between State and Federal Courts (1969) p. 65 (ALI Study); Pine, *Preserving Pendent Claims Subject to Special Limitation Periods in Missouri After the Judicial Improvements Act of 1990* (1991) 56 Mo. L.Rev. 1093, 1114 & fn. 131.)[7]

---

[6] See House Report, page 27, footnote 13, reprinted in 1990 United States Code Congressional and Administrative News, page 6873; *Exxon Mobil Corp. v. Allapattah Services, Inc.*, *supra*, 545 U.S. at page 570; *id.* at page 576 and footnote 3 (dis. opn. of Stevens, J.); Rowe, Jr., et al., *Compounding or Creating Confusion About Supplemental Jurisdiction? A Reply to Professor Freer*, *supra*, 40 Emory L.J. at page 944.

[7] Like the Report of the Federal Courts Study Committee, which Congress commissioned (see House Rep., pp. 15–17, reprinted in 1990 U.S. Code Cong. & Admin. News, pp. 6861–6862), the ALI Study was the result of federal officials seeking reform proposals from the legal community. In 1959, then-Chief Justice Warren addressed the ALI and asked it to examine ways of achieving better jurisdictional balance between the federal and state court systems; leading scholars and judges took him up on the suggestion and spent nearly a decade developing

*(footnote continued on next page)*

11

The ALI's tolling proposal is clear.  Under it, "[i]f any claim in an action timely commenced in a federal court is dismissed for lack of jurisdiction over the subject matter of the claim, a new action on the same claim brought in another court shall not be barred by a statute of limitations that would not have barred the original action had it been commenced in that court, if such new action is brought in a proper court, federal or State, within thirty days after dismissal of the original claim has become final or within such longer period as may be available under applicable State law." (ALI Study, *supra*, at p. 65.)  Thus, the proposal would provide relief from an otherwise applicable limitations bar, provided the state claim was (1) filed in federal court at a time when it would not have been barred in state court *and* (2) refiled in state court within 30 days after dismissal, absent a longer state rule.  This is, in a nutshell, the grace period interpretation of section 1367(d).  For example, a claim filed in federal court a year before expiration of the governing state limitations period, dismissed sometime after expiration of that period, and refiled more than 30 days after dismissal, would not be covered.

Elsewhere, the ALI Study confirms this reading.  As an alternate way of achieving the same intended result, it describes conditioning dismissal in federal court "on [the defendant's] waiver of the right to rely on any controlling statute of limitations that had run since suit was brought." (ALI Study, *supra*, at p. 453, fn. 1.)  The grace period interpretation does only this, but the suspension interpretation would do much more:  it would alter even limitations periods that had not run, adding to them the period of time spent in federal court plus 30 days.

---

*(footnote continued from previous page)*

the ALI Study, a detailed compendium of proposed refinements in this area.  (ALI Study, *supra*, at pp. ix–xiii, 1; Wright, *Restructuring Federal Jurisdiction:  The American Law Institute Proposals* (1969) 26 Wash. & Lee L.Rev. 185, 185–186.)

Fearing constitutional objections over encroachment upon states' prerogatives to fix their own statutes of limitations, the ALI assured that its goals were modest: the proposal was intended to "go[] no further than is necessary in order to achieve its intended result." (ALI Study, *supra*, at p. 456.) It follows that the narrower grace period view was all the ALI had in mind, and in turn all the drafters of section 1367(d) likely would have understood its proposal to accomplish when they borrowed the idea.

Section 1367(d)'s goals are modest. Its purpose is "to prevent the *loss* of claims to statutes of limitations where state law might fail to toll the running of the period of limitations while a supplemental claim was pending in federal court." (House Rep., *supra*, at p. 30, reprinted in 1990 U.S. Code Cong. & Admin. News, p. 6876, italics added; see Sen. Debate on Sen. No. 2648, 101st Cong., 2d Sess., 136 Cong. Rec. S17570, S17581 (daily ed. Oct. 27, 1990) [same]; *Jinks v. Richland County*, *supra*, 538 U.S. at p. 459 [§ 1367(d) "prevent[s] the limitations period on such supplemental claims from expiring while the plaintiff was fruitlessly pursuing them in federal court"].) The grace period reading, not the suspension approach, hews most closely to a purpose of preventing the loss of claims. If a cause of action would be lost, or have only scant days or weeks remaining on the clock when dismissal occurs, parties are assured an opportunity to proceed in state court, provided they act diligently. If dismissal occurs more than a month before a state period would expire, no federal interest is implicated, and section 1367(d) leaves state limitations periods undisturbed. The suspension view, in contrast, affects limitations periods more broadly, and in ways unnecessary to preserve any claim. Nothing in the legislative history suggests those voting intended gratuitous effects beyond what the drafters contemplated.

The available history thus favors the grace period interpretation. We recognize, however, that the chain of inferences it supports is hardly robust. Like

the purely textual considerations, which point toward a different construction, the legislative history also is insufficiently conclusive to alone justify a confident pronouncement of section 1367(d)'s intended meaning. To settle that meaning, we consider as well interpretive canons rooted in the structure of our system of government.

III. *Section 1367(d) and Federalism*

Principles of federalism dictate a distinct approach to the construction of statutes impinging on state sovereignty, one designed to ensure courts do not assume an incursion where none was intended. "When 'Congress intends to alter the "usual constitutional balance between the States and the Federal Government," it must make its intention to do so "unmistakably clear in the language of the statute." ' [Citation.] This principle applies when Congress 'intends to pre-empt the historic powers of the States' or when it legislates in ' "traditionally sensitive areas" ' that ' "affec[t] the federal balance." ' [Citation.] In such cases, the clear statement principle reflects 'an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere.' [Citation.]" (*Raygor v. Regents of Univ. of Minn.*, *supra*, 534 U.S. at pp. 543–544.) Section 1367(d) is such a balance-altering statute (*Raygor*, at p. 544); it preempts state law, supplanting to some extent state statutes of limitations that would otherwise apply to affected claims (see *id.* at p. 554 (dis. opn. of Stevens, J.); Murphy, *A Federal Practitioner's Guide To Supplemental Jurisdiction Under 28 U.S.C. 1367* (1995) 78 Marq. L.Rev. 973, 1034–1035; Pine, *Preserving Pendent Claims Subject to Special Limitation Periods in Missouri After the Judicial Improvements Act of 1990*, *supra*, 56 Mo. L.Rev. at p. 1110).

While Congress has the constitutional authority to preempt state law (e.g., *Hillman v. Maretta* (2013) 569 U.S. ___, ___ [186 L.Ed.2d 43, 53, 133 S.Ct. 1943,

1949]; *Jankey v. Lee*, *supra*, 55 Cal.4th at p. 1048), we start with the presumption that it has not exercised that power and will find preemption only in the face of a " ' "clear and manifest" ' " expression of intent to do so (*Jankey*, at p. 1048; accord, *Wyeth v. Levine* (2009) 555 U.S. 555, 565). This presumption operates with particular force in areas traditionally the subject of state regulation. (*Wyeth*, at p. 565; *Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 938.) Self-evidently, states long have established, and have a uniquely strong interest in, the limitations periods that apply to their own state law claims in their own state courts. (See, e.g., *Carnegie-Mellon Univ. v. Cohill* (1988) 484 U.S. 343, 353.)

The influence of the presumption against preemption extends beyond the assessment of whether Congress intended to displace state law; even when an intent to displace is clear, as it is here, the presumption informs assessments of the breadth of preemption. (*Brown v. Mortensen* (2011) 51 Cal.4th 1052, 1064; *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1088.) In *Brown*, we were called upon to interpret an ambiguous federal express preemption clause. Faced with more than one plausible reading and a national divide as to which was correct, we explained that under the presumption, "absent persuasive evidence Congress intended more expansive preemption, we must prefer the narrower reading of" the ambiguous statute, the reading that encroaches least on state sovereignty. (*Brown*, at p. 1064; see also *Raygor v. Regents of Univ. of Minn.*, *supra*, 534 U.S. at pp. 543–546 [applying the clear statement rule to prefer the construction of § 1367 that least impinges on state sovereignty].)

Here, the three plausible readings of section 1367(d) fall along a spectrum of encroachment. Most intrusive is the substitution approach; under that reading, in every case, no matter how long or short the federal proceedings, the state limitations period is supplanted and the time a party has to file will depend solely

15

on the length of federal proceedings, plus 30 days. Thus, an action that under state law might otherwise be governed by a 10-year limitations period (e.g., Code Civ. Proc., §§ 337.15, 337.5) could, depending on the brevity of the federal proceedings, be subjected by section 1367(d) to an effective limitations period of a matter of months. The suspension approach is somewhat less intrusive; it affects the limitations period in every case, but keeps in place the relative lengths of the state limitations periods. Least intrusive is the grace period approach. It alters the limitations period only when necessary to prevent a time bar; if a claim is dismissed more than 30 days before the state limitations period would have expired, the grace period approach would change the state period not at all. Even when extension of the limitations period to prevent a bar is necessary, the grace period view distorts the otherwise applicable period only by the difference between when the limitations period ran and the claim was dismissed, plus 30 days, rather than, as with the suspension approach, by an extension in the full amount of the entire time spent in federal court, plus 30 days.

It follows that, "absent persuasive evidence Congress intended more expansive preemption" (*Brown v. Mortensen*, *supra*, 51 Cal.4th at p. 1064), we must prefer the grace period interpretation. Here, there is no such evidence; indeed, what legislative history there is suggests the grace period view was what was always intended. (E.g., ALI Study, p. 456 [model statute on which § 1367(d) was based was intended to "go[] no further than is necessary in order to achieve its intended result"].)

In urging us to reject the grace period approach, Los Angeles contends that interpretation would leave the statute without meaning in some number of cases— namely, those in which dismissal from federal court occurred more than 30 days before an applicable state limitations period would have expired. (See *In re Vertrue Mktg. & Sales Practices Litig.*, *supra*, 719 F.3d at p. 481 [adopting this

16

argument].) Not so. Section 1367(d)'s enactment was motivated in part by a concern that existing law would chill parties from availing themselves of a federal forum. Prior to its passage, plaintiffs with related federal and state claims "had the following unattractive options: (1) They could file a single federal-court action, which would run the risk that the federal court would dismiss the state-law claims after the limitations period had expired; (2) they could file a single state-law action, which would abandon their right to a federal forum; (3) they could file separate, timely actions in federal and state court and ask that the state-court litigation be stayed pending resolution of the federal case, which would increase litigation costs with no guarantee that the state court would oblige." (*Jinks v. Richland County*, *supra*, 538 U.S. at p. 463; see *Carnegie-Mellon Univ. v. Cohill*, *supra*, 484 U.S. at p. 352, fn. 9 [discussing the pre-§ 1367(d) dilemma for plaintiffs]; Horger, *For Whom the Bell Tolls: Tolling State Statutes of Limitations and the Constitutionality of 28 U.S.C. § 1367(d)* (2003) 54 S.C. L.Rev. 1047, 1059–1060 [same].) Section 1367(d) solves these problems, "replac[ing] this selection of inadequate choices with the assurance that state-law claims asserted under § 1367(a) will not become time barred while pending in federal court." (*Jinks*, at pp. 463–464; see ALI Study, *supra*, at p. 456 [proposal is intended to "obviate[] the need for a person seeking a federal forum to engage in two lawsuits at once in order to preserve his rights"].)

The grace period view thus gives universal effect to section 1367(d): in every case, the statute serves the salutary function of eliminating the disincentives to proceed in federal court by offering a guarantee that state limitations will be without effect. Whether that guarantee proves necessary in hindsight, and whether in a given case an extension of the statute of limitations is ultimately required, is

17

irrelevant to the problem Congress sought to solve; what matters is the assurance, in advance, that claims will not be lost.[8]  Declining to extend the statute of limitations in a case where dismissal occurs well before any state period would have expired does nothing to impair that congressional intent, and does not render section 1367(d) without effect in such cases.  As the discussion of federal preemption makes clear, that an interpretation results in the initial guarantee of more time not always leading to an alteration of the state limitations period weighs in *favor* of the interpretation, because it reduces the extent to which section 1367(d) intrudes on state sovereignty.

Los Angeles also argues that Kern's preferred interpretation punishes diligent plaintiffs who file early in the limitations period by eliminating all remaining time and granting only 30 days in its place.  This would be so under the substitution interpretation, but is not the case under the grace period interpretation that Kern advocates and we adopt.  If federal proceedings end promptly and time remains on the state clock, i.e., the state claim would not have expired even absent section 1367(d), the diligent plaintiff gets all that remaining time to decide whether to try again in state court.  The sooner one files, the more likely it is there will be substantial time left on the state clock.

In sum: When construing statutes, we are mindful of, and tailor our interpretations to, the problems a legislative body was attempting to solve. (*Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 770.)  We read ambiguous statutes in the way that most closely aligns with their purpose.  (*Pacific Palisades*

---

**8**     Extending the clock analogy prevalent in tolling and statute of limitations cases, under the grace period view, section 1367(d) may be thought of as a "snooze button," always there to postpone the ringing of a final alarm if needed— but not always needed.

*Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 803; *Klein v. United States of America* (2010) 50 Cal.4th 68, 77.)  Section 1367(d) is no paragon of clarity, but among those readings plausible from the text, the grace period construction cleaves closest to the goal of avoiding the loss of claims that otherwise would be barred, while impinging least on state sovereign prerogatives to establish statutes of limitations.  In the absence of evidence Congress intended any more, we must adopt that interpretation.  We disapprove *Bonifield v. County of Nevada*, *supra*, 94 Cal.App.4th 298, to the extent it is inconsistent with these views.

DISPOSITION

For the foregoing reasons, we reverse the Court of Appeal's judgment and remand for further proceedings consistent with this opinion.

**WERDEGAR, J.**


**WE CONCUR:**


**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**RAYE, J.**[*]

---

[*]     Administrative Presiding Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** City of Los Angeles v. County of Kern
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 214 Cal.App.4th 394
**Rehearing Granted**

_____

**Opinion No.** S210150
**Date Filed:** July 7, 2014
_____

**Court:** Superior
**County:** Tulare
**Judge:** Lloyd L. Hicks

_____

**Counsel:**

Arnold & Porter, Jerome B. Falk, Jr., Steven L. Mayer, Sara J. Eisenberg; Theresa A. Goldner, County Counsel, Mark L. Nations, Deputy County Counsel; Hogan Guiney Dick, Hogan Law and Michael M. Hogan for Defendants and Appellants.

Carmen A. Trutanich and Michael N. Feuer, City Attorneys, Valerie Flores, Managing Assistant City Attorney, Edward M. Jordan, Assistant City Attorney; Beveridge & Diamond, Gary J. Smith, Zachary M. Norris and James B. Slaughter for Plaintiffs and Respondents City of Los Angeles, Responsible Biosolids Management, Inc., R&G Fanucchi, Inc., and Sierra Transport, Inc.

Lewis Brisbois Bisgaard & Smith, Daniel V. Hyde and Paul J. Beck for Plaintiff and Respondent County Sanitation District No. 2 of Los Angeles County.

Woodruff Spradlin & Smart, Bradley R. Hogin and Ricia R. Hager for Plaintiff and Respondent Orange County Sanitation District.

Law Offices of Michael J. Lampe, Michael J. Lampe and Michael P. Smith for Plaintiffs and Respondents Shaen Magan, Honey Bucket Farms, Tule Ranch/Magan Farms, Western Express, Inc., and City of Los Angeles.

Somach Simmons & Dunn, Robert L. Larson and Theresa A. Dunham for Plaintiff and Respondent California Association of Sanitation Agencies.

Freeman Freeman Smiley, Christopher M. Westhoff; and Nathan Gardner-Andrews for National Association of Clean Water Agencies as Amicus Curiae on behalf of Plaintiffs and Respondents.

Barg Coffin Lewis & Trapp and Marc A. Zeppetello for Water Environment Federation as Amicus Curiae on behalf of Plaintiffs and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Steven L. Mayer
Arnold & Porter
3 Embarcadero Center, 10th Floor
San Francisco, CA  94111
(415) 471-3100

James B. Slaughter
Beveridge & Diamond
1350 I Street, N.W., Suite 700
Washington, D.C.  20005-3311
(202) 789-6000